[Cite as *Larkin v. Larkin*, 2014-Ohio-957.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

| | | |
|---|---|---|
| ALICE K. LARKIN | : | |
| | : | Appellate Case No. 2013-CA-54 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-DR-226 |
| v. | : | |
| | : | |
| MICHAEL E. LARKIN | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of March, 2014.

. . . . . . . . . . .

DAVID P. MESAROS, Atty. Reg. #0012725, and ADAM R. MESAROS, Atty. Reg. #0089828, Mesaros Law Office, LLC, 7051 Clyo Road, Centerville, Ohio 45459
    Attorneys for Plaintiff-Appellee

PHILLIP L. BEARD, Atty. Reg. #0023197, 260 North Detroit Street, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}    Michael Larkin appeals from the trial court's September 11, 2013 judgment entry and divorce decree that, among other things, awarded appellee Alice Larkin child and spousal

support and divided the parties' assets and liabilities.

{¶ 2} Michael advances two assignments of error.[1] First, he contends the trial court erred in calculating his 2010 and 2011 income for purposes of child and spousal support. Second, he claims the trial court erred in awarding Alice half of the money in a business operating account on a certain day.

{¶ 3} The record reflects that the parties married in 1987 and separated in August 2010 when Michael left the marital home. They had five children together during the marriage. Two were emancipated at the time of the final divorce hearing. A third was eighteen years old but still in high school. The other two were minors.

{¶ 4} Around the time the parties separated, Michael created a limited liability company known as Alleys on the River. Through this business, he purchased a bowling alley from Alice's brother, John Cavalaris, on a land contract. The purchase price for the bowling alley was approximately $500,000. (April 15, 2013 Tr. at 74-75). In addition, Michael signed a $100,000 promissory note for all business assets other than the real estate. (Jan. 2, 2013 Tr. at 28). The land contract provided for monthly payments of $4,076.47. The promissory note required monthly payments of $769.15. (*Id*. at 30). Although the timing of Michael's creation of Alleys on the River and his bowling-alley purchase might appear odd given the parties' contemporaneous separation, the deal appears to have been planned for some time. Alice testified that she knew what Michael was doing and that the business had been in her family for quite a while. (*Id*. at 136).

{¶ 5} A major issue at the final hearing concerned the financial performance of the bowling alley and Michael's income from operating it. Michael testified about his personal

---

[1] For purposes of convenience and clarity, we will refer to the parties by their first names.

financial situation, which he claimed was poor, and the financial status of the business, which includes twenty-six operable bowling lanes, food service, and a bar. Michael's certified public accountant, Laura Hiler, also testified about the business's financial affairs. She identified and discussed numerous financial records, including balance sheets, profit-and-loss statements, and federal tax returns. The trial court also heard financial testimony from Matthew Sorg, who was appointed as a receiver for the business during the pendency of the divorce proceeding.

{¶ 6}    Based on the evidence presented, the trial court made the following findings with regard to Michael's income from the business:

> The Defendant is the owner-proprietor of Alleys on the River, L.L.C. Defendant's CPA, Laura Hiler, testified that his 2010 gross profits were $88,682.00. Defendant deducted $52,428.00 in depreciation and $393.00 for an employee's truck expense. After the Court adds back the depreciation and the truck expense, it finds the Defendant's 2010 income for child support purposes is $141,504.00. Ms. Hiler testified the 2011 gross receipts for the business are $713,534.00, with total expenses in the amount of $401,720.00. The Court adds back $78,725 in depreciation and $3,502.00 in truck expenses owned by an employee and finds the difference is $394,041.00, making the Defendant's income for 2011 $394,041.00. The 2010 and 2011 incomes are averaged over two years. The Defendant's two year average income is $267,772.50. This is the amount the Court will use to calculate the Defendant's child support obligation.

(Doc. #90 at 3).

{¶ 7}    Using the $267,772.50 figure as Michael's income, the trial court calculated a

child-support obligation of "$1932.54 per month for all three children." (*Id*.). The trial court also made a number of findings with regard to spousal support. In so doing, it apparently relied on the $267,772.50 figure to find that Michael was "the financially advantaged spouse[.]" (*Id*. at 5). After considering the pertinent statutory spousal support factors, the trial court awarded Alice $2,970.08 per month for ten years. (*Id*. at 6).

{¶ 8}    In his first assignment of error, Michael challenges the trial court's finding that his two-year average income is $267,772.50 for support purposes. He  argues that this figure is absurdly high because the trial court ignored ordinary and necessary operating expenses when determining that his 2010 "gross profits" were $88,682.00. Michael contends the $88,682.00 figure actually represented gross income, not gross profits, and that operating expenses should have been offset against the $88,682.00 figure.

{¶ 9}    With regard to 2011, Michael does not dispute the trial court's finding that the "gross receipts" or total sales for the business were $713,534.00. Nor does he dispute the trial court's finding that he had operating expenses of $401,720.00 or its decision to add back into the income a $78,725.00 depreciation deduction and a $3,502.00 deduction for an employee's truck expenses.[2] Based on the foregoing computations, the trial court determined that Michael's 2011 income was $394,041.00. He argues, however, that the trial court failed to deduct the cost of goods sold in the amount of $320,650.00. Michael contends the proper analysis should have been as follows: Gross receipts of $713,534.00 minus cost of goods sold in the amount of

---

[2] Michael does not challenge the correctness of the trial court's finding that for child-support computation purposes the business depreciation at issue could not be used to reduce the business's income even though depreciation is deductible for income-tax purposes. *See* R.C. 3119.01(C)(9)(b) ("Except as specifically included in 'ordinary and necessary expenses incurred in generating gross receipts' by division (C)(9)(a) of this section, 'ordinary and necessary expenses incurred in generating gross receipts' does not include depreciation expenses and

$320,650.00, resulting in gross income of $392,884.00, minus business operating expenses of $401.720.00 (with an addition back in of a $78,725.00 depreciation deduction and a $3,502.00 deduction for certain car and truck expenses), resulting in a 2011 net income of $73,391.00—not the $394,041.00 the trial court found.

{¶ 10} To clarify his analysis, Michael's appellate brief includes the following chart showing how he arrives at his claimed income:

|  | 2010 | 2011 |
|---|---|---|
| Gross Receipts | $159,884.00 | $713,534.00 |
| (Minus) Cost of Goods Sold | $71,365.00 | $320,650.00 |
| Gross Income | $88,682.00 | $392,884.00 |
| (Minus) Operating Expenses | $122,222.00 | $401,720.00 |
| (Add-back) Depreciation | $52,428.00 | $78,725.00 |
| (Add-back) Car and truck expenses | $394.00 | $3,502.00 |
| Net Income | $19,282.00 | $73,391.00 |

{¶ 11} Based on our review of the record, including CPA Hiler's testimony and Michael's tax returns, it appears that the trial court did fail to deduct from the business's 2010 gross income the business's operating expenses (excluding depreciation and the car and truck expenses). Similarly, although the trial court made some deductions from the business's 2011 gross receipts of $713,534.00, it failed to make any deduction for the cost of goods sold, which

other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business.").

was reported on a tax return to be $320,650.00. *See* Defendant's Trial Exhibit D (2010 Schedule C, Profit or Loss from Business); Defendant's Trial Exhibit E (2011 Schedule C, Profit or Loss from Business).

{¶ 12} In opposition to Michael's argument, Alice does not appear to dispute the trial court's failure to deduct operating expenses from the business's 2010 gross income. Nor does she appear to dispute the trial court's failure to deduct the cost of goods sold from the business's 2011 gross receipts of $713,534.00. Instead, Alice argues that the trial court had no obligation to accept, in toto, the testimony of CPA Hiler or the expenses and costs listed in Michael's 2010 and 2011 tax returns. Alice contends Michael's testimony and bookkeeping were less than credible. In essence, she argues that the trial court reasonably could have found his claimed expenses unreliable and even purposefully false. Therefore, she argues that the trial court did not abuse its discretion in failing to deduct the operating expenses and cost of goods sold from the business's 2010 and 2011 income.

{¶ 13} Although we do not necessarily disagree with Alice in theory, we find her argument unpersuasive here. Under appropriate circumstances, we harbor no doubt that a trial court could find claimed business expenses not credible and unworthy of belief. In the present case, however, Michael's 2010 and 2011 federal tax returns identify substantial operating expenses and expenses for the cost of goods sold. In its judgment entry and divorce decree, the trial court provided no explanation for disregarding those expenses and costs. Even if the trial court believes, as Alice apparently does, that the claimed expenses and costs are unreliable or exaggerated, we find it unlikely that none of them are valid. In any event, the listed expenses and costs cannot simply be ignored without explanation. In our view, the trial court abused its

discretion by failing to address the hundreds of thousands of dollars in business-related expenses and costs reported in Michael's 2010 and 2011 federal tax returns. Accordingly, we will sustain his first assignment of error and remand the cause for the trial court to address the claimed operating expenses and cost of goods sold. On remand, the trial court should either deduct those expenses and costs from the business's income or explain why some or all of them should not be deducted.

{¶ 14}  In his second assignment of error, Michael challenges the trial court's decision to award Alice half of the funds in an Alleys on the River business operating account as of June 15, 2011.

{¶ 15}  The record reflects that the operating account had a balance of $19,156.78 on June 15, 2011. (Jan. 2, 2013 Tr. at 148, 185). At the hearing, Michael testified that he used the account to pay bills and other expenses. (April 15, 2013 Tr. at 32). His testimony also established that the operating account balance fluctuated significantly. On June 15, 2011, the balance was $19,156.78. On October 1, 2011, the balance was $8,230.03. On October 7, 2011, Michael deposited $34,578.30 into the account. (*Id*. at 32-33).

{¶ 16}  On appeal, Michael claims the trial court erred in treating the business operating account as the parties' marital property and awarding Alice $9,578.39, which represents half of the balance on June 15, 2011. Michael asserts that the operating account was an asset of Alleys on the River, much like any other business asset or liability. Elsewhere in its decision, the trial court awarded Michael the Alleys on the River business along with its assets and liabilities. The trial court also found that the business had a value of *negative* $130,000.[3] (Doc. #90 at 9). Under

---

[3]The trial court accepted Michael's testimony that the business was worth $500,000 and that he owed approximately $630,000 on

these circumstances, Michael contends the trial court erred in treating a business asset, the operating account, as personal marital funds. He also contends the trial court arbitrarily used the June 15, 2011 operating account value when dividing the funds. In response, Alice maintains that the trial court did not err in treating the operating account as marital property and awarding her half of it. According to Alice, the trial court properly found that Michael used the account for certain personal expenses. Therefore, she contends he had a burden to prove that the account "was separate property."

{¶ 17} Contrary to Alice's argument, we see no findings by the trial court about Michael's use of the operating account. The trial court also provided no explanation for awarding Alice half of the money in the account beyond simply declaring that the account contained marital funds.[4] Nor did the trial court explain why it used the June 15, 2011 account value when dividing the account. Without any elaboration about its decision, we believe the trial court abused its discretion. Neither the trial court nor Alice has cited any evidence establishing that the operating account contained marital funds on June 15, 2011. Absent evidence to support such a conclusion, we see no reason why the money would not belong to the business rather than to the parties personally. Accordingly, we will sustain Michael's second assignment of error and remand the cause to give the trial court an opportunity to explain its decision. On remand, the trial court should either set forth how it concluded that the operating account balance on June 15, 2011 was marital property or award the entire operating account to Michael as it did the other

it.

[4]The record does reflect that on October 7, 2011 Michael deposited $34,578.30 into the operating account. (April 15, 2013 Tr. at 33). To do so, he took the money from a marital account in his name. (*Id.*). We note, however, that the trial court separately awarded Alice half of the $34,578.30 that Michael deposited into the operating account. (Doc. #90 at 8).

business assets and liabilities.

{¶ 18}   Having sustained Michael's two assignments of error, we reverse the trial court's

judgment and remand the cause for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

David P. Mesaros
Adam R. Mesaros
Phillip L. Beard
Hon. Steven L. Hurley