[Cite as *Larkin v. Larkin*, 2016-Ohio-1563.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

ALICE K. LARKIN, nka CAVALARIS    :

        :

    Plaintiff-Appellee        :    Appellate Case Nos. 2015-CA-07

        :                2015-CA-21

v.        :

        :    Trial Court Case No. 11-DR-226

MICHAEL E. LARKIN        :

        :    (Civil Appeal from Common Pleas

    Defendant-Appellant        :   Court, Domestic Relations)

        :

. . . . . . . . . .

# O P I N I O N

Rendered on the 15th day of April, 2016.

. . . . . . . . . .

ALICE K. LARKIN, nka CAVALARIS, 1764 Cleveland Road, Miami Beach, Florida 33141
    Plaintiff-Appellee, *pro se*

JEFFREY W. BOWLING, Atty. Reg. No. 0070223, Brandabur & Bowling Co., L.P.A., 315
South Monument Avenue, Hamilton, Ohio 45011
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Michael Larkin appeals from a domestic relations court judgment awarding

child and spousal support to Alice Cavalaris (formerly Larkin), his former wife, and awarding her half of the funds in the bank account used by Michael's business. Michael also appeals a judgment ordering him to pay support arrearages.

{¶ 2} We find errors in the determination of the appellant's business income used to calculate the support judgment, so the judgment for periodic support is affirmed in part and reversed in part. In the second appeal, resulting from the interim judgment of a support arrearage, entered by the court while the appeal of the periodic support amount was pending, the arrearage judgment is necessarily vacated because the support amount is now modified and must be recalculated.

## I. Background

{¶ 3} The parties were married in 1987. They have five children, and they stipulated that Alice would be the sole residential parent of those who are minors. They separated in 2010 when Michael left, and Alice filed for divorce in 2011.

{¶ 4} Around the time the parties separated, Michael created a single-member limited liability company called Alleys on the River, LLC. Through this company, Michael purchased a bowling alley from John Cavalaris, Alice's brother. Michael signed a $530,000 land contract for the real estate. The contract requires Michael to make monthly payments and states that the interest on the contract's unpaid balance is 6% per year and is calculated monthly. Michael also signed a $100,000 promissory note for all the other business assets. The note also calls for monthly payments and sets the interest on the unpaid balance at 6% per year, calculated monthly. Michael started operating Alleys on the River in September 2010.

{¶ 5} A final divorce hearing was held in 2013 at which Michael's income from the business was a major issue. Matthew Sorg, who was appointed as a receiver for the business during the pendency of the divorce proceeding, testified about the business's finances. Laura Hiler, the certified public accountant who did work for the business, also testified about the business's financial affairs. She identified and discussed financial records that she had prepared, including balance sheets, profit-and-loss statements, and federal tax returns.

{¶ 6} The trial court entered a final judgment and decree of divorce in September 2013. The court ordered Michael to pay Alice child and spousal support, basing support payments on Michael's income from the bowling alley in 2010 and 2011. The court calculated Michael's income in those two years this way:

> [Michael]'s CPA, Laura Hiler, testified that his 2010 gross profits were $88,682.00. [Michael] deducted $52,428.00 in depreciation and $393.00 for an employee's truck expense. After the Court adds back the depreciation and the truck expense, it finds [Michael]'s 2010 income for child support purposes is $141,504.00. Ms. Hiler testified the 2011 gross receipts for the business are $713,534.00, with total expenses in the amount of $401,720.00. The Court adds back $78,725 in depreciation and $3,502.00 in truck expenses owned by an employee and finds the difference is $394,041.00, making the [Michael]'s income for 2011 $394,041.00. The 2010 and 2011 incomes are averaged over two years. [Michael]'s two year

average income is $267,772.50.

*Judgment Entry And Final Decree of Divorce*, 3 (Sept. 11, 2013). Pertinently, the court also awarded each party one-half of the money that was in the Alleys on the River bank account as of June 15, 2011.

**{¶ 7}** Michael appealed, challenging the income findings for both years and challenging the division of the bank account. As to his 2010 income, Michael argued that the trial court had failed to deduct the business's ordinary and necessary operating expenses. And for 2011, he argued that the trial court had failed to deduct the cost of goods sold. We agreed on both issues:

> Based on our review of the record, including CPA Hiler's testimony and Michael's tax returns, it appears that the trial court did fail to deduct from the business's 2010 gross income the business's operating expenses (excluding depreciation and the car and truck expenses). Similarly, although the trial court made some deductions from the business's 2011 gross receipts of $713,534.00, it failed to make any deduction for the cost of goods sold, which was reported on a tax return to be $320,650.00.

*Larkin v. Larkin*, 2d Dist. Greene No. 2013-CA-54, 2014-Ohio-957, ¶ 11. We remanded "for the trial court to address the claimed operating expenses and cost of goods sold." *Id.* at ¶ 13. We directed the trial court to "either deduct those expenses and costs from the business's income or explain why some or all of them should not be deducted." *Id.* As to the division of the business bank account, Michael contended that the account was a business asset and did not contain marital funds. Michael also contended that the trial

court's use of June 15, 2011, as the valuation date was arbitrary. We remanded the account division issue "to give the trial court an opportunity to explain its decision." *Id.* at ¶ 17. We said that on remand "the trial court should either set forth how it concluded that the operating account balance on June 15, 2011 was marital property or award the entire operating account to Michael as it did the other business assets and liabilities." *Id.*

{¶ 8} On remand, the trial court held another hearing at which Michael presented testimony from Laura Hiler, his accountant, about the expenses claimed by the business on its tax returns. And the court entered a new judgment in January 2015 again awarding child and spousal support and dividing the business bank account. For 2010, the court accepted the amount stated on Michael's tax return as the cost of goods sold, and deducted $44,744 of the claimed operating expenses. In addition, the court also found that because Michael started the business in September 2010, the original 2010 income finding was based solely on the last four months of the year. So the court decided to annualize his income—calculate what it would have been if the business had been operating the entire year. Doing so, the court found that Michael's 2010 income from the business was $79,863. The court also found that in 2010 the business had given Michael $9,000 in notes payable, which the court found were simply "a means to pass money through the account and back to [Michael] without tax consequences." *Judgment Entry on Remand*, 11 (Jan. 13, 2015). So the court added the $9000 in notes to Michael's annualized figure of $79,863 income for a total 2010 income of $88,863. As to his 2011 income, the court apparently found that the entire amount claimed in the 2011 tax return as cost of goods sold ($320,650 which we had previously noted was not addressed in the

original judgment) should be deducted from the $713,534 gross receipts before making adjustments for allowable operating expenses. The court then found that only $181,255 of the 2011 tax return expenses of $401,720 (which included substantial depreciation, car expenses and other business expenses) should be deducted. The court also found that in 2011 Michael received $89,988 from the business in draws and notes payable. So the court added this amount to his income for a total income in 2011 of $301,617. As to the business bank account, the trial court again awarded each party one-half of the $19,156.78 that was in the account on June 15, 2011. The court found that this entire amount was marital property, saying that it was "earned during the marriage through [Michael]'s in-kind labor." *Id.* at 22.

{¶ 9} Michael filed his notice of appeal from the remand judgment in February 2015. Two months later, on April 6, the trial court entered an order adopting a determination made by the Greene County Child Support Enforcement Agency (CSEA). The CSEA determined that child support and medical support provisions for one of the children should end because the child had turned 18 years of age. Among the findings made by the CSEA is that Michael owed $53,831 in total arrears, mostly for child and spousal support. Accordingly, Michael was ordered to pay this amount. Michael separately appealed this order.

{¶ 10} We consolidated the arrearage-order appeal with the appeal of the remand judgment. And we consider both appeals here.

## II. Analysis

{¶ 11} Michael assigns four errors to the trial court. The first challenges the trial

court's recalculation of his 2010 and 2011 income. The second challenges the court's refusal to deduct certain operating expenses from his income. The third challenges the division of the business bank account. And the fourth assignment of error challenges the court's jurisdiction to enter the arrearage order.

{¶ 12} Alice did not file a brief in either of the present appeals.

## A. Recalculation of income

{¶ 13} The first assignment of error alleges that the trial court erred on remand by recalculating Michael's income. Michael contends that by recalculating his income the trial court disregarded our mandate and exceeded the scope of remand.

{¶ 14} Alleys on the River is a limited liability company with Michael as its only member. So all the business's profits and losses "pass through" to Michael and are included on his personal federal tax return, on Schedule C, "Profit or Loss From Business." The Schedule C included with Michael's 2010 federal tax return lists gross receipts of $159,884, cost of goods sold as $71,365, and other income of $163 for a gross income of $88,682. The form also lists $122,222 in expenses. Michael's 2011 Schedule C lists gross receipts of $713,534 and cost of goods sold as $320,650 for a gross income of $392,884. And it lists $401,720 in total expenses.

{¶ 15} In its original judgment, the trial court found that the business's 2010 gross income was $88,682, the same number as reported on 2010 Schedule C for gross income. The court then "add[ed] back the depreciation and the truck expense," finding that the 2010 income was $141,504. *Judgment Entry and Final Decree of Divorce*, 3 (Sept. 11, 2013). We determined the trial court had made a mistake by adding the 2010

depreciation and vehicle expense to gross income because the $88,682 figure was gross income (on Schedule C, gross income is gross receipts minus costs of goods sold and miscellaneous adjustments). Operating expenses (including depreciation and vehicle) had not yet been deducted so there was no reason to add unallowed expenses back in. And the court did not deduct any of the other expenses or explain why it was not deducting them. As for 2011, the trial court originally found gross receipts of $713,534 and total expenses of $401,720. The court then added back depreciation and truck expenses and found that "the difference is $394,041.00, making [Michael]'s income for 2011 $394,041.00." *Id.* What the court did was subtract the depreciation and vehicle expenses from total operating expenses and then deduct those allowable operating expenses that remained ($319,493) from gross receipts. But the court failed to take into account the $320,650 for the cost of goods sold and deduct that amount from gross receipts to obtain gross income before deducting allowable operating expenses.

{¶ 16} In our decision on Michael's appeal, we pointed out these problems with the trial court's income calculations:

Based on our review of the record, including CPA Hiler's testimony and Michael's tax returns, it appears that the trial court did fail to deduct from the business's 2010 gross income the business's operating expenses (excluding depreciation and the car and truck expenses). Similarly, although the trial court made some deductions from the business's 2011 gross receipts of $713,534.00, it failed to make any deduction for the cost of goods sold, which was reported on a tax return to be $320,650.00.

*Larkin*, 2014-Ohio-957, at ¶ 10. So we remanded the case "for the trial court to address the claimed operating expenses and cost of goods sold." *Id.* at ¶ 13. We said that "[o]n remand, the trial court should either deduct those expenses and costs from the business's income or explain why some or all of them should not be deducted." *Id.*[1]

{¶ 17} On remand, the trial court found that in 2010 the business's gross receipts minus cost of goods sold resulted in gross income (before deduction of expenses) of $88,682, the same as listed for gross income on line 7 of the 2010 tax return. The court then determined that $44,744 of the $122,222 claimed operating expenses are deductible for support purposes and would have resulted in support income of $43,938. The court also found that Michael received $9,000 in notes payable from the business in 2010 and that should be added, which would result in 2010 income of $52,938. However, the court then noted that Michael started the bowling alley in September 2010, meaning that the income findings were for only the last four months of the year. So the court decided to

---

[1] We recognize that the inaccuracies here are likely caused by the failure of the child support computation worksheet to readily accommodate tax reports of business income that involves the sale of goods. Federal Schedule C starts in Part I with "gross receipts", line 1, and allows for subtraction of "Cost of goods sold", line 4, before arriving at "Gross income"," line 7. Schedule C, in Part II, then allows for deduction of "Expenses" to eventually arrive at profit or loss. But the support worksheet goes directly from "Gross receipts," line 2a, to "Ordinary expenses," line 2b. Consequently, to properly allow for the "cost of goods sold" when using Schedlue C figures, either the trial coust must use the Schedule C "Gross income" for the "gross receipts" line 2a of the worksheet, OR, include the "cost of goods sold" and other Schedlue C Part I adjustments in the "Ordinary expenses" line 2b of the worksheet. That's confusing.

annualize Michael's 2010 income—calculate what it would have been if the business had operated the entire year. The court did this by multiplying the four-month findings by a factor of the court's own devising with adjustments for the anticipated slow months of the year (which for our decision we need not analyze). Doing so, the court found that Michael's income for all of 2010 was $88,863.

{¶ 18} As to Michael's 2011 income, the trial court found that the business had gross receipts of $713,534, that the cost of goods sold totaled $320,650, and that $181,255 of the $401,720 claimed operating expenses are deductible. The court also added other income of $89,988, the total of Michael's draws and notes payable in 2011. So the trial court found that Michael's income in 2011 was $301,617.

{¶ 19} Michael argues that by recalculating his income in both years the trial court disregarded our mandate and exceeded the scope of remand. "[T]he trial court is without authority to extend or vary the mandate given [by a reviewing court]." *Nolan v. Nolan*, 11 Ohio St.3d 1, 4, 462 N.E.2d 410 (1984). "The appellate court is in the best position to interpret its own mandate and determine whether a trial court judge has complied with that mandate." (Citation omitted.) *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29. As we see it here, there are three ways in which the trial court could be seen to have exceeded the scope of remand: by annualizing Michael's 2010 income (when annualization of 2010 income had not been applied in the original judgment), by not deducting 2011 cost of goods sold or not explaining allowable deductions of the operating expenses for either year, and by adding Michael's draws and notes payable as other income. Each of these is based on findings that the trial court did

not make the first time around.

{¶ 20} By annualizing Michael's 2010 income, we believe the trial court did exceed the scope of our remand. The fact that Michael's 2010 income came from only the last four months of the year could have been raised as an issue on appeal or before, but it wasn't. Moreover, "Income" is statutorily defined as the gross income of an employed parent or if the parent is unemployed or underemployed, as the sum of the parent's gross income and the parent's potential income. R.C. 3119.01(C)(5). "Gross income" is all income from all sources received by a parent during a calendar year, including self-generated income. R.C. 3119.01(C)(7). "Potential income," on the other hand, is income imputed to a parent that the court finds the parent would have earned if the parent had been fully employed. R.C. 3119.01(C)(11). To impute income, courts are required to follow a two-step process. *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 44. "First, there must be a finding that a parent is voluntarily unemployed or underemployed before income can be imputed. Second, a parent's potential income must be determined by evaluating the parent's work experience, education, any mental or physical disabilities, prevailing job opportunities in the area, special skill or training, evidence of ability to earn income, special needs of the children, and any other relevant factor. R.C. 3119.01(C)(11)(a)." (Citations omitted.) *Id.* Here, by annualizing Michael's 2010 income, the trial court in essence imputed income to him for the months the business was not in operation. But the court did not find that Michael was voluntarily unemployed or underemployed during the first eight months of 2010. Nor did the court determine his potential income using the factors in R.C. 3119.01(C)(11)(a) and our remand did not direct

the court to do so. We therefore conclude annualization of Michael's income exceeded the scope of our remand.

{¶ 21} To the contrary, the trial court had the authority to revisit the claimed cost of goods sold and operating expenses in 2010 and 2011. The scope of our remand encompassed, and the mandate we gave the trial court required, a reevaluation of the cost of goods sold and the operating expenses in both 2010 and 2011:

Michael's 2010 and 2011 federal tax returns identify substantial operating expenses and expenses for the cost of goods sold. In its judgment entry and divorce decree, the trial court provided no explanation for disregarding those expenses and costs. Even if the trial court believes, as Alice apparently does, that the claimed expenses and costs are unreliable or exaggerated, we find it unlikely that none of them are valid. In any event, the listed expenses and costs cannot simply be ignored without explanation. In our view, the trial court abused its discretion by failing to address the hundreds of thousands of dollars in business-related expenses and costs reported in Michael's 2010 and 2011 federal tax returns. Accordingly, we will sustain his first assignment of error and remand the cause for the trial court to address the claimed operating expenses and cost of goods sold. On remand, the trial court should either deduct those expenses and costs from the business's income or explain why some or all of them should not be deducted.

*Larkin*, 2014-Ohio-957, at ¶ 13. We further conclude that consistent with the remand, the

trial court had authority to conduct an evidentiary hearing to solidify evidence necessary to accommodate our directions on remand.

{¶ 22} Lastly, the trial court did not exceed the scope of remand by including in Michael's income the draws and notes payable from the business. The issues in the first appeal concerned Michael's gross income, which includes all income from all sources—whether it is "earned or unearned" and "whether or not the income is taxable," R.C. 3119.01(C)(7). The draws and notes payable were income to Michael. We see no reason to prevent the trial court from adding gross income on remand that became evident by review of the business income and expenses and which should have been included originally.

{¶ 23} The first assignment of error is sustained with respect to the trial court's annualization of Michael's 2010 income and is overruled in all other respects.

## B. Ordinary and necessary expenses

{¶ 24} The second assignment of error alleges that the trial court erred on remand by not allowing certain operating expenses that Michael claimed on his 2010 and 2011 federal tax returns.

{¶ 25} "Self-generated income" is statutorily defined as "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." R.C. 3119.01(C)(13). "Ordinary and necessary expenses incurred in generating gross receipts" are "actual cash items expended by the parent or the parent's business and includes depreciation

expenses of business equipment as shown on the books of a business entity." R.C. 3119.01(C)(9)(a). But, " 'ordinary and necessary expenses incurred in generating gross receipts' does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return." R.C. 3119.01(C)(9)(b). " 'A party claiming a business expense has the burden of providing suitable documentation to establish the expense. A trial court is not required to blindly accept all of the expenses an appellant claims to have deducted in his tax returns as ordinary and necessary expenses incurred in generating gross receipts.' " (Citation omitted.) *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 43 (3d Dist.), quoting *Ockunzzi v. Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, ¶ 53. *See* R.C. 3119.05(A) (saying that "parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents").

{¶ 26} The trial court found that of the total $122,222 (2010 Schedule C, line 28) claimed as operating expenses in 2010, $44,744 was ordinary and necessary for support calculation purposes. The court found that the vehicle expenses and depreciation were both discretionary expenses. Also discretionary, said the court, were the interest payments that Michael made on the land contract by which he bought the bowling alley. Lastly, the court found discretionary the "other expenses" claimed—bank service charge, cable television, cleaning, internet, credit-card fees, miscellaneous, building maintenance, snow removal, telephone, and trash removal. For 2011, the court deducted the cost of goods sold from the gross receipts to arrive at gross income. Then, the trial court found that of the $401,720 (2011 Schedule C, line 28) claimed as operating

expenses, $181,255 was ordinary and necessary for support calculation purposes. The court found discretionary the vehicle expenses, depreciation, interest on the land contract, legal and professional services, repairs and maintenance, supplies not included in cost of goods sold, and the "other expenses," which includes the other expenses claimed in 2010 plus laundry, dues and subscriptions, uniforms, postage, printing and reproduction, bad checks, and something called "over/under."

{¶ 27} Michael does not dispute that the vehicle expenses and depreciation were not ordinary and necessary expenses for support purposes. But he contends that all of the other claimed expenses were. He argues that the court ignored the testimony of his accountant, Laura Hiler, who verified all the transactions, and instead relied on the testimony of the receiver, Matthew Sorg. Indeed, in the remand decision, the trial court says that it questioned Sorg about the expenses claimed on the business's January to December 2011 profit and loss statement and December 31, 2011 balance sheet, both of which are attached to Michael's July 25, 2012 financial affidavit.

{¶ 28} As to the land contract interest payments, the court said that "Mr. Sorg specifically identified the interest paid on the Defendant's land contract to the Cavalaris family in the amount of $42,932.51 as a discretionary expense because Defendant could walk away from the land contract without any legal consequences because the property is still in the name of Eastern Bowling Lanes with the Butler County Auditor." *Judgment Entry on Remand*, 6-7 (Jan. 13, 2015). The court also said that "Mr. Sorg testified [Michael] can walk away from the land contract without penalty at any time and the business will revert back to Mr. Calvarias (sic)." *Id.* at 9.

**{¶ 29}** But, in our view, the trial court misinterpreted or misapplied Sorg's testimony. All Sorg said was that the interest was a discretionary expense. He did not say that it was discretionary because Michael could walk away. The trial court must have been reflecting on the testimony of Michael's accountant, Hiler:

q. He has a land contract.

a. Ok, right, that's correct.

q. So he's only paying rent if you will to Mr. Cavalaris?

a. Well, it's, it's a land contract but it's a financing contract.

q. But he's not at risk for any of it. He can walk away and simply owe the monthly amount to Mr. Cavalaris, correct?

a. I, I would assume that he could walk away.

* * *

q. You'd agree with me from your understanding, Mike is not on the hook for $603,000.00?

a. I, from a legal standpoint, I don't know that he could just walk away * * *.

(April 15, 2013 Hearing Tr. 12-13). Hiler is probably right that Michael can't just walk away from the land contract without consequence. The contract contains a provision that accelerates payment on default:

If any installment payment to be made by the Vendee [Alleys] under the terms of this Land Contract is not paid by the Vendee when due or within one (1) installment thereafter, the entire unpaid balance shall become due

and collectable at the election of the Vendor [Eastern] and the Vendor shall

be entitled to all the remedies provided for by the laws of this state and/or

to do any other remedies and/or relief now or hereafter provided for by law

to such Vendor * * *.

*Plaintiff's Exhibit 3*, ¶ 8 ("Land Contract").

{¶ 30} We believe the court's finding that the interest expense is discretionary is not supported by the evidence. Payment of interest for the real property, and the equipment, which are the heart of the business itself, and without which the business could not exist, is an ordinary expense, and it was an actual cash expenditure necessary for the bowling alley to operate.

{¶ 31} As to the other claimed expenses, the court also cited Sorg's testimony to support its decision:

[T]he $6,000.00 in legal fees are also discretionary because there was no litigation pending and no supporting documentation showing the purpose of the legal fees was offered into evidence; and finally, the expenses listed for contract labor in the amount of $34,212.00 were identified (sic) Mr. Sorg as discretionary. Again, no supporting documentation for the contract labor was offered into evidence.

Mr. Sorg explained the contract labor should have been included under "repairs and maintenance". Another concern was the Defendant's claim that business was poor yet he spent assets needed to protect the marital residence and support his family on a failing business. Mr. Sorg also

classified the category of "charitable donation" as a discretionary expense. He testified the $78,725.00 in depreciation expense is discretionary and is not a cash outlay for the business. The Plaintiff testified she never saw an Alley's on the River employee wear a uniform, yet Plaintiff's Exhibit 10 lists $1,544.31 in uniform expense for 2011. The Court finds the uniform deduction to be discretionary. Plaintiff also denied any knowledge of the Defendant's charitable donations in the amount of $1,500.00. The Court also finds Defendant listed discretionary meals and entertainment for business purposes. Plaintiff testified she had no knowledge of Defendant entertaining for business purposes.

*Judgment Entry on Remand*, 6-7 (Jan. 13, 2015). The trial court also found that Michael used money from the business to pay his monthly living expenses:

[Michael] eats his meals at the bowling alley as a business expense. He also testified his rent, insurance, and gifts are all covered by the business in the form of a draw. His 2012 Affidavit of Income & Expense lists "$0.00" for food and he does not deduct anything for his other monthly expenses, including rent and utilities. He also benefits by living part time with his extended family; using their housing, water, sewer, basic telephone, trash collection, gasoline, and oil, all for his personal benefit, in lieu of paying for personal living expenses. There was no testimony or evidence entered to place an exact monetary value on the benefits [Michael] receives from living at the business and at his parent's home.

*Id.* at 17.

**{¶ 32}** Michael testified that he did not use a personal bank account. He said that to pay personal expenses he would draw money from the business's operating account. These draws were not included on his federal tax returns or on the business's profit and loss statements.[2] Michael agreed that he "just used the operating account checkbook for [his] own personal expenses whenever [he] needed to, and then later had them designated as draws." (July 21, 2014 Hearing Tr. 70).

**{¶ 33}** " 'Self-generated income' includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses." R.C. 3119.01(C)(13). Here, the trial court found that the expenses claimed on the tax returns that the court found discretionary reduced Michael's personal living expenses or actually were personal expenses: "Defendant benefits from using business assets to pay for his personal living expenses by eating, drinking, and living at the business. Further the Court finds many of the expenses could be attributed to 'phantom income' in a party's gross income for the purposes of calculating support where the statute is silent as to whether

---

[2] "Defendant testified he uses draws from the business account to pay for his personal expenses. He does not include the draws on his federal tax returns. His income is not included on his payroll. Ms. Hiler also testified the owner's draws do not appear on his federal tax returns and are not included on his profit and loss statements." *Judgment Entry on Remand*, 17 (Jan. 13, 2015).

such income should be included." *Judgment Entry on Remand*, 7 (Jan. 13, 2015).

**{¶ 34}** The trial court called the expenses claimed in 2010 that it found discretionary "unexplained" and said that "[t]he only supporting documentation is Part III of the 2010 federal tax return and there was no testimony." *Id.* at 9-10.[3] And the court called the expenses claimed in 2011 that it found discretionary "undocumented or unsupported." *Id.* at 15. Therefore, because Michael did not present evidence showing what the expenses actually were, the trial court simply found that all of the claimed amounts were personal.

**{¶ 35}** Michael points out that his accountant testified that, in preparing the 2010 and 2011 tax returns, she verified all the figures: "What I did was I reconciled all those payments to the bank statements, and then from that did an accounting compilation which measures the—the materiality and that things are accurate and make sense with both the industry and the accounting standards, prepared the financial statement and then the tax return." (July 21, 2014 Hearing Tr. 14). And she cross-referenced the expenses with the checks used to pay them. Hiler testified that none of the expenses claimed on the 2010 or 2011 tax returns were "phantom figures or made up, or figures that—for which there's no documentation whatsoever," (*id.* at 20), that there are no "phantom expenses or made up or not verified in one way or another," (*id.* at 30).

**{¶ 36}** All that Hiler's testimony shows is that the money claimed to be spent on

---

[3] We assume that the court meant to say "Part V," because it is that section of the 2010 Schedule C that lists these "Other Expenses."

expenses really was spent on the expenses. But this does not mean that the expenses are allowed to be deducted under the governing statute as "ordinary and necessary." For example, Michael claims that in 2011 he paid a little over $6,000 in legal fees. Hiler verified this expense by looking at the check(s) that Michael sent his attorney. But if the fees were connected, say, to Michael's divorce case and not to a business matter, the expense is discretionary, not "ordinary and necessary." Michael did not present any evidence showing to what matter the legal fees were connected. Nor did he present any evidence showing what any of the other claimed expenses actually were.

{¶ 37} Except for the interest expenses, we cannot say that the trial court abused its discretion by not allowing a deduction for the remaining disputed claimed expenses and by including them in Michael's income.

{¶ 38} The second assignment of error is sustained to the extent that the interest expenses should have been deducted to calculate Michael's income. This requires an additional $14,561 (2010 Schedule C, line 16b) in interest expenses to be allowed as ordinary and necessary business deductions from Michael's 2010 income, and an additional $42,934 (2011 Schedule C, line 16b) in interest expenses to be allowed as ordinary and necessary business deductions from Michael's 2011 income, for calculation of support purposes. The second assignment of error is overruled in all other respects.

### C. The business bank account

{¶ 39} The third assignment of error alleges that the trial court erred by awarding Alice half of the amount that was in the business's bank account as of June 15, 2011. Michael contends that awarding Alice half of the account was an abuse of discretion

because the trial court did not explain why it used June 15, 2011, as the valuation date or cite any evidence that marital funds were placed into the account before that date.

{¶ 40} In its original judgment, the trial court found that "[a]s of June 15, 2011, the Defendant had funds deposited with PNC Bank in the amount of $19,156.78." *Judgment Entry and Final Decree of Divorce*, 8 (Sept. 11, 2013), citing Plaintiff's Exhibit 20. The court awarded each party half of the total, or $9,578.39. On appeal, Michael claimed that the trial court erred in treating the business operating account as the parties' marital property and awarding Alice half of it. We concluded that the trial court failed to explain its decision adequately:

> [W]e see no findings by the trial court about Michael's use of the operating account. The trial court also provided no explanation for awarding Alice half of the money in the account beyond simply declaring that the account contained marital funds. Nor did the trial court explain why it used the June 15, 2011 account value when dividing the account. Without any elaboration about its decision, we believe the trial court abused its discretion. Neither the trial court nor Alice has cited any evidence establishing that the operating account contained marital funds on June 15, 2011. Absent evidence to support such a conclusion, we see no reason why the money would not belong to the business rather than to the parties personally.

*Larkin*, 2014-Ohio-957, at ¶ 17. We said that on remand the trial court should explain its decision by "either set[ting] forth how it concluded that the operating account balance on June 15, 2011 was marital property or [by] award[ing] the entire operating account to

Michael as it did the other business assets and liabilities." *Id.*

**{¶ 41}** On remand, the trial court made these findings in support of its decision:

Alleys on the River is registered as an LLC in the State of Ohio. LLCs are not taxed as a separate business entity. Instead, all profits and losses are "passed through" the business to each member of the LLC. [Michael] is the single member of the LLC. LLC members report profits and losses on their personal federal tax returns, just like the owners of a partnership enjoy. * * * [Michael] mixes his personal and business expenses. [Michael] confirmed he did not have a personal checking account in June of 2011. On April 15, 2014 [Michael] testified he paid his child support out of the company. The business paid his attorney fees for the forclosure [sic] action using a draw from the busniess [sic] account. He also testified the $19,156.78 all came from the business.

*Judgment Entry on Remand*, 22 (Jan. 13, 2015). The trial court found that $19,156.78 was marital property because it was "earned during the marriage through [Michael]'s in-kind labor." *Id. See* R.C. 3105.171(A)(3)(a)(ii), (iii) (definitions of "marital property"). And the court again awarded Alice half.[4]

---

[4] The trial court also said:
[Michael] failed to support the family when he moved out of the marital residence in September of 2010. He allowed the marital residence to go without heat and to go into foreclosure. He pumped marital assests [sic] into the business and forced his family onto public assistance. The Court finds that equity justifies awarding [Alice] one-half of the PNC account that was

**{¶ 42}** Plaintiff's Exhibit 20 is not in the record. But according to the transcript of the January 2, 2013 hearing, that exhibit is a bank statement from PNC Bank, (Jan. 2, 2013 Hearing. Tr. 185), that shows that "as of June 2011, Mike had a PNC account that had $19,156.00 in it," (*id*. at 148). This explains why the trial court used June 15, 2011, as the valuation date. And we think that there is competent, credible evidence to support the trial court's finding that the business account contained marital funds.

**{¶ 43}** The third assignment of error is overruled.

### D. Arrearages order

**{¶ 44}** The fourth assignment of error alleges that the trial court erred by entering the order to pay arrearages. Michael contends that the court lacked jurisdiction to make this order because he had already filed a notice of appeal.

**{¶ 45}** "Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal. The trial court retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from." (Citations omitted.) *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 9. Here, the arrearage judgment relies on the support calculations in the judgment that Michael had already appealed and which we have now modified. Undoubtedly, absent a stay, the trial court has full authority to enforce payment of child support during an appeal of the amount thereof. Otherwise obligor parents could

produced during the marriage through her husband's inkind labor.
*Judgment Entry on Remand*, 22-23 (Jan. 13, 2015).

avoid payment for their children's well-being simply by filing an appeal of the support amount. We need not determine whether this is a jurisdictional question because our resolution of the issues raised in the first appeal necessarily change Michael's support obligation, making the arrearage judgment incorrect and the arrearage must be vacated pending recalculation of Michael's support obligation at the relevant time.

{¶ 46} The fourth assignment of error is sustained to the extent that the arrearage judgment is vacated.

### III. Conclusion

{¶ 47} We have sustained the first assignment of error in part and overruled it in part, sustained the second assignment of error in part and overruled it in part, overruled the third assignment of error, and sustained the fourth assignment of error. Therefore the trial court's judgment on remand is affirmed in part and reversed in part. The arrearage order is vacated.

{¶ 48} This case is remanded for further proceedings. On remand, consistent with this opinion, the trial court should use the following amounts in its support calculations by either method referred to herein in footnote 1:

|  | **2010** | **2011** |
|---|---|---|
| Gross receipts | $160,047[5] | $713,534 |
| Minus expenses of: |  |  |
| Cost of Goods sold | $71,365[6] |  |

[5] $159,884 in gross receipts plus $163 in other income (2010 Schedule C, Part I, Other income).

[6] $160,047 minus COGS of $71,365 equals $88,682 or the same as "gross income" on 2010 Schedule C, line 7.

| | | |
|---|---|---|
| Allowed Ordinary expenses | $59,305[7] | $320,650[8] |
| Other income | $ 9,000 | $224,189[9] |
| | | $ 89,988 |

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Alice Larkin Cavalaris
Jeffrey W. Bowling
Hon. Steven L. Hurley

---

[7] $44,744 allowed by the trial court plus $14,561 interest we have added.
[8] $713,534 minus COGS of $320,650 equals $392,884 or the same as "gross income" on 2011 Schedule C, line 7.
[9] $181,255 allowed by the trial court plus $42,934 interest we have added.