THE STATE EX REL. CINCINNATI ENQUIRER, APPELLEE, *v.* HUNTER, JUDGE, APPELLANT.

[Cite as *State ex rel. Cincinnati Enquirer v. Hunter,* 138 Ohio St.3d 51, 2013-Ohio-5614.]

*Mandamus—Contempt—Contempt of alternative writ ordering a judge to stay enforcement of entries revoking media permission to attend a juvenile hearing.*

(No. 2013-1171—Submitted December 10, 2013—Decided December 20, 2013.)

APPEAL from the Court of Appeals for Hamilton County, No. C-130183.

_____

**Per Curiam.**

{¶ 1} Appellant, Judge Tracie Hunter of the Hamilton County Court of Common Pleas, Juvenile Division, appeals a judgment of contempt issued against her by the First District Court of Appeals. For the reasons set forth below, we affirm the order.

*The underlying juvenile cases*

{¶ 2} Judge Hunter is the assigned judge presiding over twelve cases against six juvenile defendants accused of assaulting a man in the North College Hill area of Cincinnati.

{¶ 3} On August 16, 2012, appellee, the Cincinnati Enquirer, printed the names of five of the six juveniles in a newspaper article. On August 22, 2012, the Enquirer ran a follow-up article in which it identified by name, and quoted, the mother of two of the juveniles.

{¶ 4} Counsel for two of the juveniles filed motions to exclude the media from all pretrial hearings and to prohibit the photographing, filming, or taping of

the juveniles while in the court. On August 24, 2012, Juvenile Court Magistrate David Kelley convened a hearing on the motions.

**{¶ 5}** Attorneys for the state, the six juveniles, and a number of media outlets attended the hearing, and the parties agreed to resolve the pending motions to close the hearings to the media. However, the scope of the agreement is the subject of some dispute.

**{¶ 6}** It is clear that the media outlets promised not to film or photograph the juveniles' faces or identifying characteristics (such as tattoos).

**{¶ 7}** Judge Hunter's position is that the Enquirer also agreed to refrain from publishing the defendants' names, at least until after trial, based on the following remark by the Enquirer's attorney, Kent Wellington:

> The reporting about the juvenile by name in the courtroom, we would like to be able to have the right to reference those individuals *when a verdict comes out*. For example, Your Honor, if four of them are found to be innocent and two are found to be guilty, we'd like to be able to report the names of the two who are guilty or of the four who were innocent.
>
> It's not our intent to report or attribute specific testimony to the defendants who are on the stand.

(Emphasis added.) The Enquirer's position is that it expressly reserved the right to continue publishing the names, based on Wellington's statement that "[the names have] been published and they [sic] intend to continue to reference those, to the extent it's appropriate."

**{¶ 8}** Magistrate Kelley never prepared a journal entry reflecting any agreement on the issue of publishing the juveniles' names. Because the state filed notices pursuant to R.C. 2152.11(A) that it intended to seek a serious-youthful-

2

offender disposition, the judge, not the magistrate, was required to conduct the ensuing hearings in the juveniles' cases. Juv.R. 40(C)(1)(c).

{¶ 9} The Enquirer again printed the names of the six juveniles on August 25 and 31, 2012.

{¶ 10} On September 17, 2012, Judge Hunter filed an entry in one of the juveniles' cases granting the Enquirer's application for permission to broadcast or photograph court proceedings, subject to conditions, one of which was nonpublication of the juveniles' names.

> Juvenile Defendant may only be videotaped below the waist. *Names of the defendants and their parents are barred from publication or broadcast for all current and future proceedings regarding this matter.* Photographs of the defendants' parents are prohibited, as it may compromise the safety of the juveniles. If Defendants object at any time, a closure hearing will be conducted. Otherwise, this journalization reflects the policy for all future proceedings in the above referenced matter.

(Emphasis added.) The Enquirer alleges that it was unaware of the order prohibiting publication of the names until March of the following year. On March 11, 2013, two of the six juveniles agreed to enter pleas.

{¶ 11} Four days later, on March 15, 2013, in an entry filed in one juvenile's case, Judge Hunter revoked the Enquirer's permission to broadcast, film, or photograph the proceedings. Her order did not allege any violation of the agreement not to film or photograph the defendants, nor did it accuse the Enquirer of engaging in disruptive behavior that might warrant removal from the courtroom. The *only* justification offered for revoking the reporter's access was that the Enquirer printed the juveniles' names and ages on March 12, 2013. Judge

Hunter stated in her revocation order that the Enquirer had thereby violated her September 17, 2012 order.

{¶ 12} Judge Hunter cited Sup.R. 12(D) as authority for her revocation order. Sup.R. 12(D) provides that "[u]pon the failure of any media representative to comply with the conditions prescribed by this rule or judge, the judge may revoke the permission to broadcast or photograph the trial or hearing."

{¶ 13} The Enquirer alleges that on March 18, 2013, Jennifer Baker, an Enquirer reporter, was barred from entering Judge Hunter's courtroom and forced to leave the floor where the juvenile hearings were taking place. On March 25, 2013, court staff again refused to allow Baker inside the courtroom during a hearing. On the same day, Judge Hunter issued entries in the remaining cases, identical to the March 15 entry, revoking the Enquirer's permission to photograph or film the proceedings.

*The Enquirer's suit for a writ of prohibition*

{¶ 14} Meanwhile, on March 25, the Enquirer filed a complaint for a writ of prohibition in the First District Court of Appeals, seeking an order prohibiting Judge Hunter from barring the Enquirer from the proceedings. The Enquirer also filed a motion for a preliminary injunction, seeking to prohibit Judge Hunter from conducting proceedings in the juveniles' cases until the appellate court ruled on the complaint for the writ of prohibition.

{¶ 15} On March 28, 2013, Judge Hunter filed a memorandum in opposition to the motion for preliminary injunction, arguing that the complaint actually sought an injunction, not the extraordinary writ of prohibition, and thus that the court of appeals lacked jurisdiction over the matter. The court of appeals issued a judgment entry construing the Enquirer's motion for a preliminary injunction as a request for an alternative writ. The appellate court granted an alternative writ of prohibition

ordering [Judge Hunter] to stay *the enforcement of the documents dated March 15, 2013 and March 25, 2013,* revoking the Cincinnati Enquirer's permission to broadcast, televise, photograph, or record courtroom proceedings. Representatives of the Enquirer shall be permitted in the courtroom.

(Emphasis added.)

{¶ 16} The parties subsequently filed cross-motions for summary judgment, which were pending when the contempt proceedings that are the subject of this appeal commenced.

*The contempt proceedings*

{¶ 17} On June 24, 2013, pursuant to the First District's order, Judge Hunter reinstated the Enquirer's permission to broadcast, record, and photograph the court proceedings. She did so, however, subject to certain express conditions. Her entry read:

This applicant was previously barred from attending all future proceedings in this matter after violating this Court's conditions in a previous hearing, whereby this Court granted permission to broadcast. *This Entry neither alters nor amends this Court's previous Orders or this Court's pending or future Orders,* which shall be decided upon proper Motion to this Court on a case by case basis.

The Court, upon consideration of the above request, pursuant only to the First District Court's Order, while a lawsuit litigating these issues, is pending, hereby *grants its authorization* to broadcast, televise, photograph, or otherwise record judicial

proceedings in the above captioned matter, *subject to the following conditions*:

> All persons approved to broadcast, televise, photograph or record courtroom proceedings must comply with * * * Rule 14 of the Rules of Practice of the Hamilton County Juvenile Court.[1]
>
> * * *
>
> * * * Names of the Defendants and their parents are barred from publication or broadcast for all current and future proceedings regarding this matter.

(Emphasis added.)

{¶ 18} The Enquirer immediately filed a motion for contempt in the court of appeals. The Enquirer argued that Judge Hunter violated the appellate court's order because the writ compelled her to allow the Enquirer into the courtroom without conditions, whereas the entry indicated that the Enquirer could broadcast or photograph the hearings, subject to the condition that it not publish the juveniles' names. The Enquirer asserted that the judge's entry was an unconstitutional prior restraint on its right to publish information.

{¶ 19} At the contempt hearing, Judge Hunter argued that she was not in contempt of the alternative writ because she had complied with its express mandate: she allowed the Enquirer's reporters into her courtroom. She maintained that the alternative writ did not order her to rescind the September 17, 2012 ban on publishing names, nor did it purport to suspend the operation of

---

1. Loc.R. 14(D) of the Court of Common Pleas of Hamilton County, Juvenile Division, provides:

> The filming, videotaping, recording, or photographing of a victim, witness, or juror is prohibited without specific authorization of the court. If the subject matter of the proceeding is a child, the name of or identity of any party, witness, child, parent, or participant shall not be disclosed unless by specific authorization of the court.

Loc.R. 14(D) of the Court of Common Pleas of Hamilton County, Juvenile Division, and therefore she was free to reimpose a prohibition on publishing names. Finally, she contended that the Enquirer had breached its voluntary agreement to refrain from publishing the names until and unless there was a split verdict in the case.

{¶ 20} The court of appeals granted the Enquirer's contempt motion on July 23, 2013. The appellate court ordered Judge Hunter to vacate her June 24 entry within 48 hours. The court later stayed its order to allow Judge Hunter to appeal to this court.

*Legal analysis*

*Standard of review*

{¶ 21} This court reviews a lower court's decision in a civil-contempt proceeding for an abuse of discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). " 'Abuse of discretion' connotes an unreasonable, arbitrary, or unconscionable decision." *State ex rel. Stine v. Brown Cty. Bd. of Elections*, 101 Ohio St.3d 252, 2004-Ohio-771, 804 N.E.2d 415, ¶ 12.

*Judge Hunter's first proposition of law*

{¶ 22} In her first proposition of law, Judge Hunter argues that the Enquirer entered into a binding settlement agreement with the attorneys for the juveniles when they appeared before the magistrate. Specifically, the Enquirer agreed not to publish the juveniles' names; in return, the juveniles did not exercise their rights to ask that the hearings be closed to the media. Judge Hunter protests that her enforcement of the agreement should not be a basis to hold her in contempt.

{¶ 23} Judge Hunter's claim that she was merely enforcing the agreement misses the point. The question before this court is whether the appellate court abused its discretion when it determined that Judge Hunter's June 24, 2013 entry

violated the terms of the alternative writ. Judge Hunter's reliance on the Kelley agreement provides no defense to that charge.

{¶ 24} Proposition of law one does not address the substantive issue before the court, and we reject it on that basis.

*Judge Hunter's second proposition of law*

{¶ 25} In her second proposition of law, Judge Hunter suggests that the appellate court's alternative writ was too uncertain in its terms to put her on notice that continuing the ban on publishing the names of the juveniles was improper. If a contempt charge is premised on a party's failure to obey an order of the court, then the order must be clear and definite, unambiguous, and not subject to dual interpretations. *Hurst v. Hurst*, 5th Dist. Licking No. 12-CA-70, 2013-Ohio-2674, ¶ 53; *Perkins v. Gorski*, 8th Dist. Cuyahoga No. 98478, 2013-Ohio-265, ¶ 11. An order that is indefinite or uncertain in its meaning cannot be enforced in contempt. *In re Ayer*, 119 Ohio App.3d 571, 576, 695 N.E.2d 1180 (1st Dist.1997).

{¶ 26} Judge Hunter was given plain notice of what the court of appeals required her to do. The alternative writ ordered her to suspend her March 15 and March 25 orders, which revoked the Enquirer's privileges as punishment for printing the juveniles' names. Publication of the names was the only reason that the judge banned the Enquirer from her courtroom. She never accused the Enquirer of violating the restrictions on photographing or broadcasting the hearings. And because the orders revoking the Enquirer's access to the hearings were inextricably tied to the publication ban that the orders purported to enforce, by suspending one, the appellate court necessarily suspended the other. Any other interpretation would render the alternative writ meaningless. Judge Hunter could comply with the writ by admitting the Enquirer reporters to the courtroom, only to expel them the next time they printed one of the juveniles' names. Thus, the

8

appellate court's alternative writ would provide the Enquirer only the illusion of relief.

{¶ 27} Judge Hunter would have the court excuse her noncompliance on the grounds that she was unclear as to what was required. However, a party cannot avoid contempt for violating an order that is plain on its face based on the contemnor's subjective misunderstanding of the order. *Scarnecchia v. Rebhan*, 7th Dist. Mahoning No. 05 MA 213, 2006-Ohio-7053, ¶ 19.

{¶ 28} Moreover, it appears from Judge Hunter's June 24 entry that she knew exactly what the alternative writ meant. In that entry, while purporting to comply with the alternative writ, she gratuitously remarked that "[t]his Entry neither alters nor amends this Court's previous Orders or this Court's pending or future Orders." The alternative writ commanded her to alter or amend her previous orders, so her statement to the contrary is nothing more than a declaration of defiance.

{¶ 29} The appellate court is in the best position to interpret its own mandate and determine whether a trial court judge has complied with that mandate. *State ex rel. Jelinek v. Schneider*, 127 Ohio St.3d 332, 2010-Ohio-5986, 939 N.E.2d 847, ¶ 14. Because we review the contempt order for an abuse of discretion—a highly deferential standard of review, *Bay Mechanical & Elec. Corp. v. Testa*, 133 Ohio St.3d 423, 2012-Ohio-4312, 978 N.E.2d 882, ¶ 16—we will not lightly substitute our interpretation for that of the issuing court. *See Denovchek v. Trumbull Cty. Bd. of Commrs.,* 36 Ohio St.3d 14, 16, 520 N.E.2d 1362 (1988) ("the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, [and therefore] great reliance should be placed upon the discretion of the [court]").

{¶ 30} Based on the foregoing, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Graydon, Head & Ritchey, L.L.P., John C. Greiner, and Darren W. Ford, for appellee.

McKinney & Namei and Firooz T. Namei; and James F. Bogen, for appellant.

_____