[Cite as *Morgan v. Morgan*, 2024-Ohio-2067.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| BARBARA A. MORGAN, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 112972 |
| v. | : | |
| MELVIN R. MORGAN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 30, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-10-331959

### *Appearances:*

Buckley King LPA and Gregory S. Costabile, *for appellee.*

Stafford Law Co., L.P.A., Joseph G. Stafford, Nicole A.
Cruz, and Kelley R. Tauring, *for appellant.*

LISA B. FORBES, J.:

{¶ 1} Melvin R. Morgan ("Melvin") appeals from the domestic relations court's judgment entry adopting the magistrate's decision in this case concerning

post-divorce decree proceedings.  After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

## I.    Facts and Procedural History

{¶ 2}    Melvin and Barbara A. Morgan ("Barbara") were married on June 12, 1982, and divorced on March 7, 2013.   The parties entered into a separation agreement (the "Separation Agreement"), which was attached to and made part of the divorce decree.  The Separation Agreement required the parties to "cooperate * * * in obtaining a term life insurance policy on [Melvin's] life with [Barbara] named as the owner and sole beneficiary of the [policy], in the amount of $1,000,000 * * *."

{¶ 3}    On November 15, 2013, Barbara filed a motion to show cause and for attorney fees, arguing that Melvin "fail[ed] to put in place a life insurance policy to cover retirement assets in excess of one million dollars, as required by the parties['] Separation Agreement."  On November 27, 2013, Melvin filed, among other things, a motion to modify life insurance provision, arguing that he complied with the court's order, but the "life insurance policy selected by [Barbara] is extremely expensive and [he] cannot afford" it.   On December 9, 2014, after a multiday hearing, the magistrate denied both motions.  On March 31, 2015, the court adopted the magistrate's decision, finding that: (1) as to Barbara's motion to show cause, both parties failed to comply with the details of the court order regarding the life insurance policy; and (2) as to Melvin's motion to modify, "[t]he parties have not consented to [the] court having continued jurisdiction over the division of retirement assets * * *."  Neither party appealed these rulings.

{¶ 4} On June 30, 2014, Melvin filed a motion to modify division of property, arguing that "he has come to learn" that the property division "is in accurate [sic] and needs to be modified." Melvin further stated that "there are numerous error [sic] in the calculation of the monthly pension amount, periodic payments amount and lump sum benefit." The court denied this motion on December 18, 2014, finding that Melvin failed to "point the Court to specific errors in the [division of property] or identify any inconsistency between the [division of property] and the parties' [divorce decree and separation] agreement."

{¶ 5} Melvin appealed the "the trial court's decision denying his post-decree motion to modify division of property order," and this court affirmed. *Morgan v. Morgan*, 8th Dist. Cuyahoga No. 102498, 2016-Ohio-104 ("*Morgan I*").

{¶ 6} On July 8, 2016, Barbara filed a second motion to show cause and for attorney fees, arguing that "Melvin continues to violate this Court's Judgment Entry by failing and refusing to cooperate in obtaining a life insurance policy on his life with Barbara named as the owner * * *."

{¶ 7} On August 30, 2017, after a hearing, the magistrate denied this motion. On February 28, 2018, the court adopted the magistrate's decision, finding that "because [Barbara] never presented an application [for life insurance, Melvin's] duty to sign and submit the application never arose; consequently, he is not in contempt." Additionally, the court ordered Melvin to provide Barbara's counsel with three written quotes for the term life insurance at issue. The court also ordered Barbara to choose a policy and Melvin to submit the completed application for this

policy. Melvin and Barbara appealed this order, and this court affirmed. *Morgan v. Morgan*, 8th Dist. Cuyahoga Nos. 106963 and 106996, 2018-Ohio-5044 ("*Morgan II*").

{¶ 8} On May 29, 2019, Barbara filed a third motion to show cause and for attorney fees, arguing that Melvin still "refuses to secure that important life insurance policy" at issue. On January 21, 2020, Melvin filed a second motion to modify life insurance obligation. Multiple hearings were scheduled regarding these motions, and over the course of the next three years during the Covid-19 pandemic, the parties filed one joint motion to continue, Barbara filed one motion to continue, and Melvin filed four motions to continue.

{¶ 9} Relevant to this appeal, in December 2022, the court set a hearing for multiple days in February 2023 on the parties' motions. On January 30, 2023, Melvin filed a motion to continue the "trial," arguing that his counsel was scheduled to be in "trial" in three other cases, two of which were scheduled prior to the scheduling of the motion hearing in the case at hand. On February 2, 2023, the court denied Melvin's request for a continuance, noting that this "matter has been continued previously due to the unavailability of counsel and has been pending for an impermissible amount of time." The trial court further stated as follows:

> Counsel for [Melvin] is scheduled for hearing before the undersigned magistrate in DR-20-381232 ("Capiccioni") on the same dates herein. The magistrate will proceed to hear the instant matter prior to hearing the Capiccioni matter. Should any counsel be unable to attend the scheduled hearing, he shall provide substitute counsel to represent his/her client in hearing/trial. Failure to appear shall result in the dismissal of the motion for want of prosecution.

{¶ 10} The magistrate held a two-day hearing in February 2023, and issued a decision on March 10, 2023, denying Melvin's motion to modify life insurance obligation and granting Barbara's motion to show cause and for attorney fees. Specifically, the magistrate found that Melvin was in contempt of court because, rather than comply with the court's order regarding the term life insurance policy, he "created an Irrevocable Life Insurance Trust * * * on May 29, 2018," that "fails to name [Barbara] as sole owner and beneficiary * * *." Furthermore, when awarding Barbara attorney fees, the magistrate found that Melvin "persistently sought a way around compliance with the orders of the Court."

{¶ 11} On June 15, 2023, the court adopted the magistrate's decision. It is from this order that Melvin appeals, raising four assignments of error for our review:

> I.      The trial court erred as a matter of law and abused its discretion by violating his right to due process of law, denying [Melvin's] motion for continuance, and depriving him of his chosen counsel.
>
> II.     The trial court erred as a matter of law and abused its discretion by finding [Melvin] in contempt of court when he had complied with his obligations and [Barbara] failed to satisfy any obligations under court orders.
>
> III.    The trial court erred as a matter of law and abused its discretion by denying [Melvin's] motion to modify life insurance obligation.
>
> IV.     The trial court erred as a matter of law and abused its discretion by awarding [Barbara] her attorney fees and litigation expenses.

## II.  Pertinent Sections of the Parties' Separation Agreement

{¶ 12} The Separation Agreement states as follows regarding the term life insurance at issue in the instant case:

## ARTICLE 3.  DIVISION OF PROPERTY

* * *

## (D) RETIREMENT ASSETS

* * *

**Term Life Insurance Policy (Pre-Retirement Survivorship):** [Melvin] shall cooperate with [Barbara] in obtaining a term life insurance policy on [Melvin's] life with [Barbara] named as the owner and sole beneficiary of the policy, in the amount of $1,000,000.  (Or the actual amount needed to secure [Barbara's] full payment/benefit amt., as determined by QDRO consultants, including [Barbara's] share of DROP.  [Melvin] shall cooperate in the completion of any necessary paperwork, forms, physicals, etc., necessary to secure such term insurance coverage.  An application to secure the XXXX $1 million term policy shall be made, by [Melvin], by 3/12/13.

The parties shall maintain such term life insurance policy in full force and effect by paying the applicable premiums in a timely fashion until the earliest to occur of [Melvin's] death, [Barbara's] death or the date that [Barbara] has obtained post-retirement survivorship coverage under the Plan to the extent of her assigned interest in the pension, and has rec'd her full payment due under DROP.  At that time, term life insurance coverage on [Melvin's] life (as set forth above), with [Barbara] named as sole owner and sole beneficiary shall be reduced to the full amount of [Barbara's] interest in DROP is fully received by [Barbara] [sic].

[Barbara] shall be liable for making the necessary premium payments, but she shall be reimbursed by [Melvin] of one-half the cost of such coverage within seven (7) days of notice of such premium payment. Notwithstanding the above, the parties may terminate or modify the amount of term life insurance coverage by mutual written consent.

* * *

## ARTICLE 4.  LIFE INSURANCE

Except for life insurance as set forth above (to secure [Barbara's] interest in [Melvin's] OP&F Pension and DROP account), which is excluded herein, [Melvin] and [Barbara] shall each retain ownership in any and all life insurance policies, presently in effect, for which they are

the owner. [Melvin] and [Barbara] shall hold each other harmless from any expense, loss, claim or liability in connection with their respective life insurance policies, and each shall be liable for the premiums due on their respective life insurance policies.

Until a life insurance policy totaling $1 million in death benefits is secured (w/ [Barbara] as sole beneficiary as set forth in the w/in Agreement) [Melvin] shall maintain [Barbara] as sole beneficiary on his existing life insurance policies (which [Melvin] represents have a current total of approx. $400,000 in death benefits). [Melvin] shall provide [Barbara] w/ proof of sd. policies, and that she is solely beneficiary of the existing policies, by 2/28/13 and weekly thereafter until the $1 million policy is secured.

## III. The Irrevocable Life Insurance Trust Agreement

{¶ 13} On May 29, 2018, Melvin entered into an irrevocable trust agreement (the "Trust") with Aaron M. Morgan ("Aaron"), who is Melvin and Barbara's son, wherein Melvin transferred to Aaron "certain assets to purchase the insurance policy" at issue.[1] Article One, Section B of the Trust states as follows:

General Purpose: [Melvin] has established this Trust to satisfy the provisions of [the] divorce decree [in the case at hand,] which requires [Melvin] to reimburse [Barbara] for the purchase of life insurance in an amount up to one million dollars and payable to [Barbara] in the event [Melvin] should pass away prior to retiring and receiving his pension from the Ohio Police and Fire pension fund.

* * *

Barbara * * * shall be entitled to receive monthly payments in an amount calculated under the terms of the Divorce Decree from this Trust only if she has met all the requirements in the Divorce Decree. Such requirements shall include but not be limited to reimbursing the Trustee for one half of the cost of the annual premium payments for the insurance within seven days of notice of such payment and payment of one half of the cost of preparing this trust agreement.

---

[1] A copy of the Trust was introduced into evidence at the hearing on Barbara's motion to show cause addressed later in this opinion.

{¶ 14} Article Three of the Trust, however, states that when Melvin dies, all of the assets of the Trust shall be distributed equally between Melvin's three children.

{¶ 15} Attached to the Trust is a copy of a Prudential life insurance policy. Under this policy, Melvin is the insured, the "ownership and control" of the policy belongs to Aaron, as trustee, and the beneficiary of the policy is Aaron, as trustee.

## IV. Hearing Testimony

{¶ 16} At the February 13, and 15, 2023 hearing on Barbara's motion to show cause and for attorney fees and Melvin's motion to modify life insurance obligation, Melvin testified, as if on cross-examination, about the life insurance provision in the Separation Agreement.

{¶ 17} Asked if he "continued to provide [Barbara] with [weekly] proof of the insurance policies" as set forth in the separation agreement, Melvin answered, "Not as of this date, no." Melvin explained that he provided "those copies" for "a reasonable period of time," but that he stopped "because there were a lot of the weeks subsequently." Melvin further testified that "those policies * * *expired." Asked if he took "any steps to maintain a $400,000 life insurance policy in place prior to obtaining the $1 million policy," Melvin answered, "No."

{¶ 18} Melvin testified about an email exchange between him and Barbara that took place in February 2018. In this exchange, Melvin said the following to Barbara:

> I believe that the policy has since expired, and a new policy was put in
> place after the divorce to protect our children from the debt incurred as

a result of the divorce in case of my death.  They are named as equal beneficiaries and I will not be making any changes to my current life insurance policies.

Joe had promised to marry you and promised you a rich exciting life that [you] could not wait to get to.  Go enjoy it and leave me alone. Maybe go find something else to do like get a job.

I have already exhausted far too much time and energy trying to find a resolution to the life insurance to continue to still be working on this.  I will be in contact with Kim the first of the week next week.

{¶ 19} Asked if he complied with the February 28, 2018 journal entry ordering him to send to Barbara three written quotes for life insurance, "where she is the owner of the policy and the sole beneficiary in the amount of $1 million," Melvin replied, "I did not send quotes under the — the way you stated that."  Melvin testified that on May 29, 2018, he took out a life insurance policy "with the trust," naming his three children as equal beneficiaries.  Melvin further testified that the "ownership and control" of the policy belonged to Aaron.  Asked if "there is nothing on this page under, 'Ownership or control,' that says the owner of the life insurance policy is Barbara * * *," Melvin replied, "That's correct."  Asked if "[n]othing in this beneficiary provision states that Barbara * * * is the beneficiary of this life insurance," Melvin answered, "According to this page, that is correct."

{¶ 20} Melvin testified that his intent in creating the Trust was "that any funds would then roll to [his and Barbara's] children."  The magistrate asked Melvin to clarify his "understanding of the [T]rust" that he created, and Melvin testified as follows: "That [Barbara] could certainly — the whole intent was that her interest in

the pension benefit, the monthly benefit would be protected, and then any remaining funds would go to the two."

{¶ 21} Melvin testified on direct examination that he has been employed by the city of Parma fire department since 1983. At the time of the hearing, Melvin was a captain of the fire department, and he supervised 35 "guys" and five stations. Melvin testified that at the time he and Barbara were divorced, which was in February 2013, he had a pension through the Parma fire department. In April 2013, Melvin had a meeting with the "pension board," and after this meeting, his understanding of the division of property section of his divorce decree was that it "needs to be revised."

{¶ 22} Melvin next testified about the February 2018 judgment entry that ordered him to "submit insurance quotes" to Barbara. According to Melvin, he submitted "[n]umerous quotes" to Barbara starting in 2013 and continuing "for five more years." Asked how many he submitted, Melvin answered, "I would say it could be 12 to 15."

{¶ 23} Melvin testified about emails between him and Barbara from May 2018. According to Melvin, the emails are "an overview explaining a solution, to provide [the Trust], who the executors or trustees would be, finance, investment options and actual costs." The emails included "prices for quotes" from "three different insurance companies * * *," all of which contemplated the Trust as the sole owner and beneficiary of the policies.

{¶ 24} Melvin stated to Barbara in one of the emails as follows: "I will expect a decision on or before next Wednesday, May 16th of 2018" regarding the insurance quotes he provided. Asked if Barbara responded to the email, Melvin stated, "I could not say off the top of my head, but I have just referenced the [e]mail chain here, so I would say, no." Asked to clarify, Melvin testified that he was "not sure if she answered at all or just never agree[d]."

{¶ 25} In one of the emails, Barbara wrote the following:

You are in contempt for removing me from your work Cincinnati Life Insurance Policy. You are in contempt for not putting a $1 million policy in place with me, as sole owner and beneficiary. And you are in contempt for ignoring the * * * order to provide me, through my attorney, with three applications for $1 million life insurance policies with me as sole owner and beneficiary.

{¶ 26} Melvin explained the Trust that he opted for as follows:

Irrevocable Life Insurance Trust, that, after years of research through this whole thing, everything proved that, not only need or exceed the intent of this order and protect primarily Barb, and then secondly, the children.

So, the intent is, not only, to just meet the agreement, the legal side of the agreement, but to truly protect Barb's interest in my pension, and then let those funds roll, post her death to the children, whatever funds would be left; and there may be none or it may be a substantial amount. It most likely would still be a lot of the money if it is invested correctly and not spent foolishly.

{¶ 27} According to Melvin, he obtained a life insurance policy in 2018 to "protect [Barbara's] interest in the pension fund." Melvin further testified that "because the agreement states 1 million, and we didn't actually agree on the value between 650 and between 1.3 million, I put a $1 million policy in place with Prudential * * *." According to Melvin, he named his middle child, Aaron, as the

trustee of the Trust "[b]ecause they're going to take care of their mother, as opposed to some outside party that would follow the letter of the trust." Melvin testified that, as of the date of the hearing, Barbara "has not contributed to any premium payments" of the insurance policy in the Trust.

{¶ 28} Asked why he filed a motion to modify the insurance obligation in this case, Melvin stated, "For a better solution. It was a fairer solution. It is a deeper solution."

{¶ 29} Barbara's attorney testified as to his attorney fees. He has 30 years of experience as an attorney, with 20 years of experience as a certified specialist in family law. Seventy to 80 percent of his practice is in the area of family law, and his hourly rate is $325. He submitted his fee bill for the "issue of contempt" related to the February 2018 court order, which showed fees through February 11, 2023, which is two days before the hearing took place. Barbara's attorney noted that the time spent in the hearing, which lasted two days, would be added to his bill. He testified that R.C. 3105.73 allows for attorney fees "based on the parties' actions or inactions of this case."

{¶ 30} Barbara's attorney testified that the issue of show cause and contempt went on "much further than it should have," due to Melvin and Melvin's counsel's actions and inactions. For example, he testified about the difficulties he encountered during discovery, the two appeals that Melvin filed, and Melvin's noncompliance with the February 2018 court order.

## V. Law and Analysis

### A. Standard of Review

{¶ 31} In *Feldman v. Feldman*, 8th Dist. Cuyahoga No. 92015, 2009-Ohio-4202, ¶ 11, this court held that

> [t]he Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Thus, when reviewing a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard.

{¶ 32} "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). In *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), the Ohio Supreme Court held that "[a]lthough *Adams* dealt with 'abuse of discretion' in a criminal law context, * * * the term has the same meaning when applied in a domestic relations context."

### B. Denial of Motion for Continuance

{¶ 33} "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). Courts have used the following guidelines when evaluating a request for a continuance:

[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68.

{¶ 34} First, we note that nowhere in Melvin's appellate briefing does he identify which motion for continuance this assignment of error relates to. Our review of the docket shows that Melvin filed 11 motions for continuance in the domestic relations court over the course of this case. For the purpose of this appeal, we assume that Melvin is challenging the trial court's denial of his motion for continuance filed January 30, 2023, because this motion concerns the February 2023 hearing at issue in this case.

{¶ 35} Second, we note that in Melvin's January 30, 2023 motion for continuance, as well as on appeal, he refers to the February 2023 hearing as a "trial." In fact, it was a two-day hearing on Barbara's May 29, 2019 motion to show cause and for attorney fees and Melvin's January 21, 2020 motion to modify life insurance obligation.

{¶ 36} On appeal, Melvin argues that the court "knowingly deprived [him] of his chosen [c]ounsel at trial, and its failure to grant [him] a continuance of trial constitutes reversible error for violating [his] right to due process." To support this argument, Melvin cites to Sup.R. 41(B)(1), which concerns "Conflict of Trial Date Assignments," and states as follows:

When a continuance is requested for the reasons that counsel is scheduled to appear in another case assigned for trial on the same date in the same or another trial court of this state, the case which was first set for trial shall have priority and shall be tried on the date assigned. * * * The court should not consider any motion for a continuance due to a conflict of trial assignment dates unless a copy of the conflicting assignment is attached to the motion and the motion is filed not less than thirty days prior to trial.

{¶ 37} During the February 2023 hearing, the magistrate noted the following: "part of the reason I denied the continuance [is because the] motions have been on the docket for, believe it or not, this one will be on there I believe it is four years, whoa, so it is four years this May * * *." Furthermore, in denying Melvin's motion for continuance, the trial court noted that this "matter has been continued previously due to the unavailability of counsel and has been pending for an impermissible amount of time." The court also noted that Melvin's counsel was scheduled to appear at a hearing in front of the court in another matter on the same date as the hearing in the case at hand was scheduled and the magistrate would hear the instant matter prior to the other matter.

{¶ 38} The hearing was held as scheduled on February 13, and February 15, 2023. Melvin was represented by one of the attorneys in the law firm that he hired to represent him. At some point during the February 13 hearing, someone Melvin referred to as his "lead counsel" appeared and argued to the court that his colleague had another "trial" to get to. Despite being scheduled until 4:30 p.m., the court adjourned for the day around noon and picked up the hearing on February 15, where

Melvin was again represented by one of the attorneys in the law firm that he hired to represent him.

{¶ 39} In analyzing the facts under *Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078, we find the following. Melvin did not request any specific length of time for the continuance. Rather, he suggested that the dates "will be rescheduled by separate Order of this Court." As the docket in this case reflects, the first motion that was heard was just shy of four years old and the second motion that was heard was more than three years old. As noted, the court granted several continuances regarding these motions. As for the inconvenience, only two witnesses, Melvin and Barbara's attorney, testified at the February 2023 hearing. The reason behind Melvin's requested delay was that his attorney had other court matters set for the same time. The trial court attempted to work with Melvin's attorney's schedule by setting the hearing immediately prior to another proceeding involving the same counsel and the same court.

{¶ 40} Our review of the record shows that Melvin was represented by competent counsel at the hearing, and the motions that were the subject of the hearing were pending for an excessive amount of time after several continuances had been granted, the majority of which were at Melvin's request. *See, e.g., State v. Johnson*, 6th Dist. Williams No. WM-17-004, 2017-Ohio-8340, ¶ 10 ("We refuse to find that trial counsel's scheduling conflict, standing alone, was a sufficient reason for the trial court to grant the motion for continuance, especially where the matter had already been delayed upon appellant's request.").

{¶ 41} Additionally, we note that Sup.R. 41(B)(1) applies to conflicting trial dates. This case concerns a post-divorce decree motion and hearing, to which Sup.R. 41(B)(1) arguably does not apply. Moreover, even if it did, Melvin did not file his January 30, 2023 motion for continuance at least 30 days prior to the February 13, 2023 and February 15, 2023 hearing dates. Consequently, under Sup.R. 41(B)(1), the court was under no obligation to even consider it. *See State ex rel. E.M. v. Jones*, 8th Dist. Cuyahoga No. 111402, 2022-Ohio-1178, ¶ 6 (holding that the trial court "had no clear legal duty to grant" a motion for continuance "based on Sup.R. 41," when the motion was filed seven days prior to trial); *State ex rel. J.H. v. Jones*, 8th Dist. Cuyahoga No. 112826, 2023-Ohio-1902, ¶ 8 (following *State ex rel. E.M.* and denying relief "because the relator had not complied with the requirement of Sup.R. 41(B)(1) that the continuance motion must be filed not less than 30 days prior to trial").

{¶ 42} Accordingly, Melvin's first assignment of error is overruled.

## C. Contempt of Court

{¶ 43} "To establish a prima facie case of contempt of court, the moving party must establish, by clear and convincing evidence, the existence of a court order, the nonmoving party's knowledge of that order, and that the nonmoving party violated it." *S.R. v. S.R.*, 2023-Ohio-531, 209 N.E.3d 205, ¶ 15 (8th Dist.). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

If the party moving for contempt establishes a prima facie case, the burden shifts to the nonmoving party to rebut the demonstration by a preponderance of the evidence. *K.M.M. v. A.J.T.*, 8th Dist. Cuyahoga No. 109815, 2021-Ohio-2452, ¶ 24.

{¶ 44} The Ohio Supreme Court has held that "[i]f a contempt charge is premised on a party's failure to obey an order of the court, then the order must be clear and definite, unambiguous, and not subject to dual interpretations." *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 25.

{¶ 45} The March 7, 2013 divorce decree and separation agreement states that Melvin and Barbara are to "cooperate * * * in obtaining a term life insurance policy on [Melvin's] life with [Barbara] names as the owner and sole beneficiary of the [policy], in the amount of $1,000,000 * * *." The word "cooperate" proved to create discord, resulting in continued litigation for the next ten years, clarified court orders, and two appeals. However, the requirement that Barbara be named as the sole owner and beneficiary of the policy never changed. Additionally, in the court's February 28, 2018 journal entry, it instructed Melvin to provide Barbara with three written quotes for insurance that met the requirement that she be named as the sole policy owner and beneficiary.

{¶ 46} In the court's June 15, 2023 journal entry adopting the magistrate's decision and granting Barbara's motion to show cause, the court found the following:

A review of the testimony and evidence illustrates that [Melvin] did not "substantially" comply with the Court's order. [Melvin's] argument ignores the text of the Separation agreement and February 28, 2018 Judgment Entry along with the clear intent of those provisions. Rather, [Melvin] created an Irrevocable Life Insurance Trust on May 29, 2018, which includes various impediments to [Barbara] as the purported policy owner and sole beneficiary. * * * Said impediments include costs and expenses that [Melvin] obligates [Barbara] to pay which were not ordered or contemplated by the Parties['] Separation Agreement.

Further, the listed beneficiary on the trust is one of the Parties' adult children. The Trust itself appears to benefit the Parties['] now adult children when the purpose of the policy, as reflected in both the Separation Agreement and the February 28, 2018 Judgment Entry, * * * is for the sole benefit of [Barbara].

{¶ 47} Our review of the record shows that there is clear and convincing evidence of the following: a court order existed requiring a $1 million insurance policy be put in place on Melvin's life with Barbara as the sole owner and beneficiary; Melvin knew of this court order as demonstrated by ten years of litigation; and the Trust established by Melvin did not comply with the court's February 28, 2018 order. Furthermore, Melvin admitted during his testimony that, in 2018, he did not provide Barbara with three quotes for insurance that met the clear particulars outlined in the court's February 28, 2018 order. Despite having knowledge of the court order, Melvin continued to avoid complying with it. This evidence amounts to Barbara making a prima facie showing of contempt.

{¶ 48} The burden then shifted to Melvin to rebut the evidence. In Melvin's appellate brief, he argues that he "presented unrefuted evidence that he complied with the February 18, 2108 Judgment Entry by providing [Barbara] with five (5) quotes for a $1,000,000 life insurance policy following the February 28, [2018]

Judgment Entry." The problem with Melvin's argument on appeal is that it is not accurate. Melvin unequivocally testified that he did not "send quotes" to Barbara according to the dictates of their divorce decree. Further, he testified that the owner and beneficiary of the life insurance policy in the Trust was their son Aaron, as trustee, which is confirmed by the terms of the Trust in evidence. In other words, Melvin's evidence showed that he failed to comply with the court order.

{¶ 49} Accordingly, the court did not abuse its discretion when it granted Barbara's motion to show cause and held Melvin in contempt of the divorce decree and February 28, 2018 court order. Melvin's second assignment of error is overruled.

### D. Denial of Motion to Modify Life Insurance Obligation

{¶ 50} In Melvin's third assignment of error, he argues that his "obligations to obtain a life insurance policy to secure * * * Barbara['s] interests in his DROP benefit should be modified" because "the trial court was authorized to clarify and interpret the division of property * * *."

{¶ 51} Specifically, Melvin argues as follows under this assignment of error:

> The Separation Agreement expressly considered that [Melvin's] life insurance obligation would decrease once [his] DROP benefits were in payout. * * * The record demonstrates, however that it is unrefuted that [Melvin] neither participates in nor is entitled to any benefits under DROP, and there is no benefit to be secured by the $1,000,000.00 policy. * * * Thus, it is necessary that [Melvin's] life insurance obligations be interpreted and clarified to remove the obligation to secure a benefit that no longer exists.

{¶ 52} We note that Melvin did not file a motion to "clarify and interpret" the life insurance obligation; rather, he filed a document captioned "motion to modify

life insurance obligation." Furthermore, a careful reading of Melvin's argument, as well as his motion, shows that he is not requesting that the life insurance obligation in the divorce decree be clarified or interpreted. Melvin is asking that the provision of the Separation Agreement, to which the parties mutually consented, regarding the term life insurance be eliminated. Melvin cites no law to support his ask. The one case that he does cite, *Karabogias v. Zoltansky*, 8th Dist. Cuyahoga No. 111062, 2023-Ohio-227, ¶ 4, stands for the proposition that the trial court had the authority to issue an amended qualified domestic relations order to clarify the valuation dates of certain marital assets when the original order "stated that each item of marital property 'will not be valued as of January 8, 2019,'" which was the date the divorce trial began.

{¶ 53} We find that *Karabogias* has no application to the case at hand. Additionally, this court has consistently held that "[i]f evidence, authority, and arguments exist that can support an assignment of error, it is not the duty of the appellate court to root it out." *Sutton v. Ohio Dept. of Edn.*, 2017-Ohio-105, 80 N.E.3d 1238, ¶ 35 (8th Dist.).

{¶ 54} Melvin failed to demonstrate that he is entitled to the relief he seeks, namely eliminating a contract provision to which he agreed. Therefore, we cannot say that the court abused its discretion by denying his motion to modify life insurance obligation, and we overrule his third assignment of error.

### E. Attorney Fees and Litigation Expenses

**{¶ 55}** In divorce cases, "the court must start with the presumption that attorney fees are the responsibility of the party who retains the attorney." *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, ¶ 33. However, pursuant to R.C. 3105.73(A),

> [i]n an action for divorce, * * * a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors that the court deems appropriate.

**{¶ 56}** Under his final assignment of error, Melvin argues that the court erred by awarding Barbara attorney fees because "the underlying Motion to Show Cause lacks any support * * * and the June 15, 2023 Judgment Entry's findings of contempt are reversible error * * *."

**{¶ 57}** In Melvin's second assignment of error, we upheld the court's June 15, 2023 journal entry and found that the court did not abuse its discretion by holding Melvin in contempt of court and granting Barbara's motion to show cause. As this is the only reasoning Melvin sets forth under this assignment of error, we need go no further in rejecting this argument. Melvin's fourth and final assignment of error is overruled.

**{¶ 58}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR