[Cite as *Rose v. Rose*, 2024-Ohio-2436.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

KRISTEN ROSE

    Appellee

v.

BRENDAN ROSE

    Appellant

C.A. No.     30890

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2019-11-2988

DECISION AND JOURNAL ENTRY

Dated: June 26, 2024

HENSAL, Judge.

{¶1}    Brendan Rose appeals an order of the Summit County Court of Common Pleas, Domestic Relations Division, that found him in contempt. This Court affirms.

I.

{¶2}    Brendan and Kristen Rose divorced in 2021 after twenty-five years of marriage. Prior to trial, the parties entered into a number of stipulations related to the division of their marital property. The trial court heard the remaining issues, and the resulting decree incorporated the trial court's decision and the stipulations. With respect to the marital home, the decree set forth the parties' agreement to divide the proceeds of the home equally. The decree also provided, however, that the proceeds from the sale of the home would be subject to a setoff intended to equalize the distribution of assets in light of Mr. Rose's retained interest in his businesses, which the trial court valued at $326,000 for that purpose. The trial court adopted the parties' agreement that their retirement accounts would be divided equally, with that division subject to the same setoff for Mr.

Rose's retained business interests. The decree ordered Mr. Rose to "pay * * * the remaining balance owed to the business valuator Baum and Blaugard," as set forth in the parties' stipulations.

{¶3} Approximately five months after the decree was journalized, Ms. Rose filed a motion to show cause for contempt. She argued that Mr. Rose had refused to cooperate in the disbursement of the proceeds resulting from the sale of the marital residence, had not taken any steps toward dividing his retirement accounts, and had refused to pay the balance due to the business evaluator. Ms. Rose also requested an award of attorney's fees in connection with the motion to show cause. After conducting a hearing, a magistrate concluded that Mr. Rose was in contempt for failing to pay the balance owed to the business valuator; that he had access to the information needed to initiate division of the retirement accounts but failed to do so; and that he "unduly caused a delay in disbursements of the proceeds from the sale of the real estate[.]" The magistrate also concluded that Mr. Rose should pay $5,370.00 in attorney's fees arising from the contempt motion.

{¶4} The trial court entered judgment on the same day pursuant to Civil Rule 53(D)(4)(e)(i). Both parties filed objections. The trial court overruled all of the objections, and Mr. Rose appealed. He has raised eight assignments of error for this Court's review, and this Court has rearranged his assignments of error for purposes of disposition.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN SUSTAINING [MS. ROSE'S] MOTION TO SHOW CAUSE AS IT PERTAINS TO THE BALANCE OWED BY BAUM BLAUGRUND, LLC, AS THE EVIDENCE PRESENTED ESTABLISHED THAT THE FINAL REPORT WAS NEVER COMPLETED.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S RULING SUSTAINING [MS. ROSE'S] MOTION TO SHOW CAUSE AS IT PERTAINS TO THE BALANCE OWED TO BAUM BLAUGRUND, LLC WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY SUSTAINING [MS. ROSE'S] MOTION TO SHOW CAUSE DUE TO [MR. ROSE'S] ALLEGED FAILURE TO DIVIDE HIS RETIREMENT ACCOUNTS.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY SUSTAINING [MS. ROSE'S] MOTION TO SHOW CAUSE DUE [TO MR. ROSE'S] ALLEGED FAILURE TO DIVIDE HIS RETIREMENT ACCOUNTS AS THE RULING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY SUSTAINING [MS. ROSE'S] MOTION FOR CONTEMPT IN REGARDS TO [MR. ROSE'S] ALLEGED FAILURE TO COOPERATE WITH THE DISTRIBUTION OF THE MARITAL PROCEEDS UPON THE SALE OF THE RESIDENCE.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED BY SUSTAINING [MS. ROSE'S] MOTION FOR CONTEMPT IN REGARDS TO [MR. ROSE'S] ALLEGED FAILURE TO COOPERATE WITH THE DISTRIBUTION OF THE MARITAL PROCEEDS UPON SALE OF THE RESIDENCE AS THE RULING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5} Mr. Rose's first, second, third, fourth, fifth, and sixth assignments of error argue that the trial court erred by finding him in contempt for failure to pay the balance owed to the business valuator, failing to take steps to divide his retirement accounts, and failing to cooperate in distribution of the proceeds of the sale of the marital residence. With respect to each of the grounds for the contempt, Mr. Rose has argued that the trial court's decision is contrary to the

manifest weight of the evidence and that it reflects an abuse of discretion. This Court does not agree.

{¶6} Contempt is established when the movant demonstrates the existence of "a valid court order, knowledge of the order by the defendant, and a violation of the order." *Henry v. Henry*, 9th Dist. Summit No. 27696, 2015-Ohio-4350, ¶ 12, quoting *State v. Komadina*, 9th Dist. Lorain No. 03CA008325, 2004-Ohio-4962, ¶ 11. This Court reviews a trial court's finding of contempt for an abuse of discretion. *See State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, ¶ 21. Nonetheless, some of this Court's decisions also seem to address the weight of the evidence when it is raised by the appellant. *See*, *e.g.*, *Russell v. Connor*, 9th Dist. Summit No. 30597, 2023-Ohio-4631, ¶ 13-17. In other cases, this Court has not addressed the weight of the evidence. *See*, *e.g.*, *Knott v. Knott*, 9th Dist. Summit No. 28895, 2018-Ohio-4198, ¶ 21-24. Another case blends abuse of discretion and manifest weight, concluding that the trial court's contempt judgment must be affirmed if "the trial court reasonably found that [the movant] supported his motion by clear and convincing evidence." *Badertscher v. Badertscher*, 9th Dist. Wayne No. 14AP0019, 2015-Ohio-2189, ¶ 9. *But see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, paragraph two of the syllabus ("In civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence.")

{¶7} In this case, because Mr. Rose has argued both abuse of discretion and manifest weight, this Court will consider the trial court's judgment of contempt from both perspectives. "When reviewing the manifest weight of the evidence in a civil case, this Court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created

such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Kokoski v. Kokoski*, 9th Dist. Lorain No. 12CA010202, 2013-Ohio-3567, ¶ 26, quoting *Eastley* at ¶ 20.

**{¶8}** In his first and second assignments of error, Mr. Rose argues that the trial court erred by finding him in contempt for failure to pay the business valuator. The divorce decree required Mr. Rose to pay "the remaining balance owed" to the business valuator. During the contempt hearing, Mr. Rose testified that he paid the valuator in full, but he later clarified that he meant the valuator "ha[d] been paid all that they are due." He acknowledged the existence of an invoice from the valuator that reflected a balance due of $5,569.89 that remained outstanding "[a]ccording to [the valuator]." Mr. Rose explained that he had not paid the valuator anything after paying the $4,000 retainer, however, because he believed that the valuator did not complete the work. Neither the decree nor the parties' stipulations placed any preconditions upon Mr. Rose's obligation to pay the balance owed to the valuator. The trial court's conclusions that the decree obligated Mr. Rose to pay the balance to the valuator and that he failed to do so are not against the manifest weight of the evidence.

**{¶9}** Mr. Rose's argument that the trial court's decision on this point is an abuse of discretion is, like his manifest-weight argument, focused on the evidence presented at the hearing. An abuse of discretion, however, is something more than an error of law or in the exercise of judgment: "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The Supreme Court of Ohio has explained:

> an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384 (1959).

> For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id*., quoting *Spalding* at 384-385.

*State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24.

{¶10} Apart from reiterating that, in his view, the evidence does not support the trial court's conclusions, Mr. Rose has not identified any way in which the trial court's judgment demonstrates an abuse of discretion. This Court cannot conclude, under these circumstances, that the trial court abused its discretion by holding Mr. Rose in contempt for failure to pay the balance due the valuator.

{¶11} In his third and fourth assignments of error, Mr. Rose has argued that the trial court erred by finding him in contempt for failing to take steps to divide his retirement accounts. In the decree, the trial court adopted the parties' agreement that the parties' retirement accounts would be divided equally, with that division subject to a setoff in favor of Ms. Rose in the amount of one-half of the value of Mr. Rose's retained business assets. Paragraphs twenty-one and twenty-two of the parties' agreement provided that they would equally divide each of Mr. Rose's three Ameritrade IRA accounts and that his 401(K) would be allocated equally between them. Both paragraphs provided that this division was subject to paragraph twenty-eight, which provided that Ms. Rose would be awarded additional assets to achieve an equal division of martial property in light of Mr. Rose's retention of certain business interests. The decree, in turn, specified how the property division would be equalized:

> [Mr. Rose] shall pay [Ms. Rose] as specified in paragraph #28 of the parties' joint stipulations, starting with the proceeds of the sale of the house, then his accounts in paragraph 21 of the joint stipulations, then his accounts in paragraph #22 of the parties' joint stipulations if the parties do not agree otherwise * * * on the assets to use to equalize the assets and liabilities described above. The parties shall otherwise follow their joint stipulations to effectuate an equal division of all the

assets and liabilities mentioned in the parties' joint stipulations and the Court shall retain jurisdiction to effectuate that equal division required by their joint stipulations.

During the contempt hearing, Mr. Rose acknowledged each of these provisions.

{¶12} Mr. Rose also acknowledged that he provided documents related to the retirement accounts to his attorneys on September 7, 2022, and that they were provided to Ms. Rose's attorney the following day. He did not identify any earlier occasions when he provided documents, and he testified that he (and not Ms. Rose) had access to the account documentation. Mr. Rose explained that his delay was due to his busy work schedule, the fact that he rarely logged into his retirement accounts, and the fact that he had difficulty keeping track of his passwords. During his cross-examination, however, he also opined that the division of the accounts was unfair because he believed that a significant tax liability should be shared between the spouses.

{¶13} Based on the evidence at the contempt hearing, this Court cannot conclude that the trial court's judgment finding Mr. Rose in contempt for failing to take steps to facilitate division of the retirement accounts is against the manifest weight of the evidence. Mr. Rose's abuse-of-discretion argument, like his manifest-weight argument, focuses on the relative strength of the evidence. He has not identified any way in which the trial court's judgment demonstrates an abuse of discretion. *Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, at ¶ 24.

{¶14} Mr. Rose's fifth and sixth assignments of error argue that the trial court erred by finding him in contempt with respect to distribution of the proceeds that resulted from the sale of the marital home. The divorce decree set forth the parties' agreement to sell the marital home and to divide the proceeds equally. The decree also incorporated the terms of paragraph thirteen of the parties' stipulations, which in turn provided that the cost of improvements to the home requested by the realtor would be shared equally by the parties and explained that the parties could use the

Chase Sapphire Credit Card to fund those expenses. The decree provided that the balance on that card would be paid from the proceeds of the marital home, and paragraph twenty-four of the stipulations explained that this debt was to be paid "prior to allocation of the remaining net proceeds to each party." According to the decree, as with the retirement accounts, the proceeds from the sale of the residence were subject to a setoff in favor of Ms. Rose in the amount of one-half of the value of Mr. Rose's retained business interests. Mr. Rose acknowledged that he was aware of each of these provisions.

{¶15} The basis of Ms. Rose's motion for contempt with respect to the proceeds from the sale is that the proceeds could not be distributed until Mr. Rose executed an affidavit setting forth the distribution as required by the title company. That affidavit was not ultimately signed until August 9, 2022, approximately ten months after the sale of the home. Mr. Rose testified that he first became aware that an affidavit was required when he received an email from the title company on January 4, 2022. According to Mr. Rose, an earlier email was sent to an email address that he rarely used. Mr. Rose acknowledged that he was told that the affidavit needed to be executed within the week because lack of access to the funds had affected Ms. Rose.

{¶16} The January 4, 2022, affidavit that was emailed to Mr. Rose provided that the first $9,047.73 from escrow proceeds would be paid to Ms. Rose because a tax lien in that amount was Mr. Rose's responsibility. Mr. Rose testified that he did not sign the affidavit, which he believed to have been drafted by Ms. Rose's attorney, because it included that language. Instead, on July 22, 2022, Mr. Rose proposed an alternative affidavit. His proposal omitted reference to the tax lien, provided that the balance on the Chase Sapphire balance would be a setoff against his obligations to Ms. Rose, and stated that before proceeds of the sale would be used to satisfy the setoff for his retained business interests, they would be applied to the balance owed on two

vehicles. This language is not included in the divorce decree. Mr. Rose ultimately signed an affidavit on August 9, 2022, that omitted reference to the tax lien as well as the additional requirements added by Mr. Rose. Mr. Rose's testimony did not explain the delay in execution of the affidavit that occurred between January 2022 and August 2022 except to say that he refused to sign the original language because it referred to the tax lien.

{¶17} Given the evidence related to the timing of the affidavit, this Court cannot conclude that the trial court's judgment with respect to the distribution of the sale proceeds is against the manifest weight of the evidence. As with his other arguments, Mr. Rose has not identified any way apart from the relative strength of the evidence in which he maintains that the trial court's judgment demonstrates an abuse of discretion. *Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, at ¶ 24.

{¶18} This Court cannot conclude that the trial court's contempt judgment is contrary to the manifest weight of the evidence, nor can we conclude that the trial court abused its discretion by finding Mr. Rose in contempt. Mr. Rose's first, second, third, fourth, fifth and sixth assignments of error are overruled.

### ASSIGNMENT OF ERROR VII

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING [MS. ROSE] ATTORNEY FEES IN THE AMOUNT OF $5,730.00.

### ASSIGNMENT OF ERROR VIII

THE TRIAL COURT ERRED BY AWARDING [MS. ROSE] ATTORNEY FEES IN THE AMOUNT OF $5,730.00 AS THE RULING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶19} Mr. Rose's seventh and eighth assignments of error purport to challenge the trial court's decision to award attorney's fees in connection with the contempt. Mr. Rose has not provided an argument related to attorney's fees "with citations to the authorities, statutes, and parts

of the record" upon which he relies. *See* App.R. 16(A)(7). Instead, Mr. Rose's sole argument is that because there should not have been a finding of contempt in the first place, it was error for the trial court to award attorney's fees. This Court has overruled Mr. Rose's assignments of error related to the contempt findings, so his assignments of error related to attorney's fees are also not well taken. Mr. Rose's seventh and eighth assignments of error are overruled.

III.

{¶20} Mr. Rose's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

FLAGG LANZINGER, J.
<u>CONCURS.</u>

CARR, P. J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶21} I write separately to highlight the interplay between the manifest weight standard and the abuse of discretion standard in this Court's review of contempt cases. Civil contempt must be proven by clear and convincing evidence and is reviewable under a manifest weight standard. Once the trial court determines there is clear and convincing evidence of a violation of a court order, then the trial court has the discretion to actually find the party in contempt. With respect to this case, I agree with the majority that the judgment should be affirmed under both standards of review.

<u>APPEARANCES:</u>

JEFFREY V. HAWKINS, Attorney at Law, for Appellant.

GREGORY S. COSTABILE, Attorney at Law, for Appellee.